**Christopher M. FUNK, Appellant
(Defendant),**

v.

**Linda MACAULAY, Appellee (Plaintiff).**

No. 2–1281–A–412.

Court of Appeals of Indiana,
Second District.

Dec. 12, 1983.

E. Kent Moore, Moore, Sandy, Moore & Deets, Lafayette, for appellant.

Thomas W. Munger, Lafayette, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Christopher M. Funk (Funk) seeks reversal of a trial court decision finding him in contempt of court for interfering with the custodial rights of Linda Macaulay (Macaulay), focusing his argument on the trial court's jurisdiction under the Uniform Child Custody Jurisdiction Act [hereinafter cited as the UCCJA] and the sufficiency of the evidence.

We affirm.

## FACTS

In 1971, the Tippecanoe Superior Court entered a divorce decree that awarded Macaulay custody of the parties' two minor children, provided Funk with visitation rights, and ordered Funk to pay child support. Since the divorce, Funk has continued to reside in Indiana. Macaulay and the children, however, established permanent residence in California in 1972.

There has been a running battle between the parties for more than ten years. Both

Funk and Macaulay have been found in contempt by Indiana courts for either "child snatching", abuse of visitation, or denial of visitation. Multiple claims and counterclaims for modification of visitation, custody, and support have also been filed by both parties in Indiana.

The chain of events resulting in this appeal began when Funk sought modification of custody in Tippecanoe Superior Court in 1981. Later, he dismissed the petition and refiled it in California (the only contact with the California courts). Before the California custody modification cause was heard, Macaulay filed the present contempt action. Funk's allegedly contemptuous acts included telephoning the children daily in order to encourage the son's truancy and both children's abusive behavior toward their mother. A motion to dismiss for lack of jurisdiction was denied, and Funk was found to be in contempt.[1]

## ISSUES

Funk presents two issues which we have restated as follows:

1. Did the trial court properly exercise jurisdiction over the contempt proceeding under the UCCJA and the Parental Kidnapping Prevention Act [hereinafter cited as the PKPA]?

2. Was there sufficient evidence to support the contempt judgment?

## DECISION

ISSUE ONE—Did the trial court properly exercise jurisdiction over the contempt proceeding under the UCCJA and the PKPA?

PARTIES' CONTENTIONS—Funk posits that this custody proceeding falls within the guidelines of the UCCJA under which California is the proper jurisdictional situs. Macaulay counters that Indiana either has continuing jurisdiction under the UCCJA or

1. We deny Macaulay's petition to file a supplemental statement of the facts and case relevant to the supplemental record. The items covered by the supplemental record were essentially included in Macaulay's original statement of the case and facts and are unnecessary to our decision.

may continue to enforce its prior custody order until California modifies the provisions.

CONCLUSION—The trial court properly exercised its continuing jurisdiction over the contempt proceeding under the UCCJA and the PKPA.

To reach our conclusion, we must hurdle two obstacles. The first is whether the UCCJA applies to a contempt proceeding without an accompanying custody modification petition. Because we conclude that it does, our second obstacle is whether the provisions of the UCCJA and the PKPA allow Indiana to exercise jurisdiction.

We face a somewhat novel posture of events in that we must decide whether the UCCJA was intended to apply to a contempt proceeding which is not joined with a petition for modification of custody or visitation. In the past, some courts have taken the position that they may grant relief because they have continuing jurisdiction by virtue of their inherent contempt powers to punish disobedience of or ensure compliance with their earlier orders. *See Hogan v. Hogan,* (1972) 29 Ohio App.2d 69, 278 N.E.2d 367; *Brocker v. Brocker,* (1968) 429 Pa. 513, 241 A.2d 336, *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773. We find this view of continuing jurisdiction improper in light of the express provisions and intent of the UCCJA.

The UCCJA was promulgated to define which state has jurisdiction "to make a child *custody determination* by initial or modification decree." Ind.Code 31-1-11.-6-3 (1977) (emphasis supplied). A "custody determination" is defined as "a court decision and court orders and instructions providing for the *custody of a child, including visitation rights;* it does not include a decision relating to child support or any other monetary obligation of any person." IC 31-1-11.6-2(2) (1977) (emphasis supplied). This language is unambiguous—the UCCJA covers all cases involving issues of custody *and visitation.*

■ To prevent repetition of Funk's contemptuous behavior, Macaulay sought to limit his telephone conversations with the children to Sundays. *Record* at 16–17. We recognize that telephone communications are an important facet of "visitation rights" in a parent-child relationship separated by hundreds of miles. Therefore, the relief sought in Macaulay's contempt action comes within the express provisions of the UCCJA in that it seeks to modify visitation rights. Seeking such relief under the guise of a show cause hearing does not affect our decision. We conclude that, when a contempt proceeding is "inextricably interwoven" with matters of custody and visitation, the UCCJA governs any jurisdictional issue. *See Siegel v. Siegel,* (1981) 84 Ill.2d 212, 228, 49 Ill.Dec. 298, 305, 417 N.E.2d 1312, 1319. This view ensures that *all* custody and visitation matters are litigated in the proper forum, as set forth in the UCCJA.

■ Having decided that this case falls within the domain of the UCCJA, we now concentrate on selection of the correct jurisdiction. Instead of being limited to concepts of comity and full faith and credit, our "legislature has adopted a scheme to combat the harrassing and vindictive use of custody proceedings with the concomitant result of inconsistent judgments among the several states." *Campbell v. Campbell,* (1979) 180 Ind.App. 351, 357, 388 N.E.2d 607, 610. That scheme, the UCCJA, provides the following ground rules for choosing a jurisdiction:

"(a) *If a court of another state has made a custody decree, a court of this state shall not modify that decree unless* (1) it appears to the court of this state that *the court which rendered the decree does not now have jurisdiction* under jurisdictional prerequisites substantially in accordance with this chapter *or has declined to assume jurisdiction* to modify the decree *and (2) the court of this state has jurisdiction.*"

IC 31-1-11.6-14 (1977) (emphasis supplied) [hereinafter cited as section 14]. Also, the UCCJA defines jurisdiction by way of two alternate methods commonly referred to as

the "home state test" and the "significant connections test":

> "(a) *[a] court of this state* which is competent to decide child custody matters *has jurisdiction to make a child custody determination by initial or modification decree if:* (1) *this state (A) is the home state of the child* at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; *or* (2) *it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state,* and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

IC 31–1–11.6–3 (emphasis supplied) [hereinafter cited as section 3].

Indiana courts have been called upon to apply section 14 and section 3 in the past, but generally in the context of deciding whether Indiana had jurisdiction to make an initial custody decision or to modify the initial custody decree of another state. *See, e.g., In re Marriage of Hudson,* (1982) Ind.App., 434 N.E.2d 107, *cert. denied,* —— U.S. ——, 103 S.Ct. 1187, 75 L.Ed.2d 433; *In re Marriage of Cline,* (1982) Ind.App., 433 N.E.2d 51; *Brokus v. Brokus,* (1981) Ind.App., 420 N.E.2d 1242 (cases in which issue was jurisdiction over initial custody proceedings); *In re Lemond,* (1979) Ind. App., 395 N.E.2d 1287, *trans. denied* (case in which issue was jurisdiction over modification of initial decree of another state). We must now employ section 14 and section 3 to decide whether Indiana has continuing jurisdiction to modify or refuse to modify *its own initial* custody order.

We find guidance in the words of Professor Bodenheimer, the reporter for the commission which drafted the UCCJA:[2]

"The UCCJA was designed 'to bring some semblance of order into the existing chaos.' In order to do so, the Act had to go further than simply codifying the principle of recognition of out-of-state custody decrees. It had to strengthen the continuing jurisdiction of the state of the initial decree; it had to insulate that jurisdiction from out-of-state interference; in other words, it had to bestow legal effect upon that continuing jurisdiction which operates beyond the state borders.

Accordingly, Section 14 of the UCCJA provides that once 'a court of another state has made a custody decree, a court of this state shall not modify that decree.' In other words, the *continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction.* Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered.

. . . .

Modification jurisdiction ... is governed primarily by Section 14, reinforced, where necessary, by the stronger clean hands rule of Section 8(b). As the Commissioners' Note to Section 6 states, 'once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14.' This means that *only one state—the state of continuing jurisdiction—has power to modify the custody decree. Only that state decides whether to decline the exercise of its jurisdiction in any particular case.* The rule is clear and simple. *There can be no concurrent jurisdiction and no*

---

2. Earlier articles written by Professor Bodenheimer have also been used by our court to interpret the UCCJA. *See Clark v. Clark,* (1980) Ind.App., 404 N.E.2d 23.

*jurisdictional conflict between two states."*

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 FAM.L.Q. 214, 216 (1981) (emphasis supplied) (quoting *Prefatory Note to UCCJA,* 9 UNIFORM LAWS ANN. 114 (1979)). This language emphasizes that the original court is intended by the explicit terms of the UCCJA (sections 14 and 3) to have and retain *exclusive, continuing* jurisdiction until it relinquishes that jurisdiction.

To determine when Indiana would relinquish its jurisdiction, section 3 is the guidepost. If Indiana cannot pass either the "home state test" or the "significant connections test", continuing jurisdiction is lost. For our purposes, California has become the new home state of the children because they have lived there for more than ten years. It is crucial, then, to determine if Indiana still has significant connections with the children as envisioned by the UCCJA drafters. Once again, we look to Professor Bodenheimer for guidance:

"Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, *significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required."*

Bodenheimer, *supra* at 215 (emphasis supplied). *Accord Kumar v. Superior Court,* (1982) 32 Cal.3d 689, 652 P.2d 1003, 186 Cal.Rptr. 772.

Funk has remained in Indiana since the time of the divorce. Furthermore, it appears from the record that the children have visited him in Indiana at least twice each year, for one week at Christmas and six weeks in the summer. *Record* at 11. Court records of the initial divorce decree are present in Indiana. In fact, records of the innumerable proceedings brought by both Funk and Macaulay to modify custody or visitation rights or increase support are *all* present in Indiana. Consequently, Indiana has continued to maintain "significant connections" with the litigants and the children. *See also In re Custody of Helwig,* (1982) Ind., 442 N.E.2d 1035; *Clark, supra* (cases in which Indiana had continuing jurisdiction because when the custody modification petition was filed Indiana was still "home state" of children).

Our peregrination through the UCCJA must continue. Once it is settled that Indiana has continuing jurisdiction over custody modification questions, we must determine whether the trial court abused its discretion in exercising that jurisdiction:

"(a) *A court which has jurisdiction* under this chapter to make an initial or modification decree *may decline to exercise its jurisdiction* any time before making a decree *if it finds that it is an inconvenient forum* to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

. . . .

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the *interest of the child* that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

. . . .

(5) if the exercise of jurisdiction by a court of this state would contravene any of the *purposes* stated in section one of this chapter."

IC 31–1–11.6–7 (1977) (emphasis supplied) [hereinafter cited as section 7]. The effect of the UCCJA is to force the trial judge to walk a tight rope, balancing himself between assuming or not assuming jurisdiction.

There is some merit to the claim that, because California has been the home state of the children and Macaulay for approximately ten years, California is the more convenient forum for custody modification. However, as section 7 dictates, the key to

any forum choice is the best "interest of the child" and the purposes for which the UCCJA was adopted. The intended thrust of the UCCJA is to eliminate "forum shopping" and "child snatching":

"It will be recalled that for a long time child snatching prior to or after a custody decree was quasi-accepted behavior, somewhere in a no man's land of the law.... Existing custody determinations could be reopened elsewhere and relitigated on the merits, and the child's 'best interests' were often assessed differently by a judge in the new state. This state of the law not only encouraged kidnapping and the retention of children after out-of-state visits; it also led to jurisdictional competition between several states, keeping the lives of many children in constant turmoil."

Bodenheimer, *supra* at 203–04. *See also* IC 31–1–11.6–1 (1977) (purposes of UCCJA).

Applying these principles, the prior conduct of the parties tilts the scales in favor of Indiana's jurisdiction. During the ten years of California residency, both Funk and Macaulay utilized Indiana courts for litigation of custody, support, and visitation questions. Now, both parties seek to continue the battle in California—Macaulay because it is a more convenient forum and Funk because he hopes for a different assessment of the children's best interest. To allow California to reopen and relitigate the children's custody at this late date would serve only to encourage the type of behavior already exhibited by the parties. Accordingly, we believe there is a rational basis for the trial court's decision to exercise jurisdiction in this case. The constant turmoil in the lives of these children should end. Thus, we conclude the trial court did not abuse its discretion in determining that it is in the children's best interest to leave the dispute where it began, in Indiana.

We would also note that Funk's filing of a custody modification petition in California

has no effect on this proceeding. The UCCJA does provide a procedure to eliminate concurrent custody litigation:

"(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."

IC 31–1–11.6–6 (1977) (emphasis supplied) [hereinafter cited as section 6]. However, section 6 is used to eliminate conflicts in making an initial custody decision and has no bearing on a custody modification setting such as ours:

"Section 6 regarding simultaneous proceedings is not applicable when one state has continuing jurisdiction. There is no need to go through a conflict-resolving mechanism when there is, or should be, no conflict since jurisdiction of the state of the prior decree is exclusive."

Bodenheimer, *supra* at 218. *Cf. Clark, supra* (case in which section 6 invoked in custody modification setting but no proceeding found pending in another state). Moreover, California did not exercise its jurisdiction "substantially in conformity with this chapter" so we need not defer to the prior filing of a custody modification petition in California. The trial court correctly denied Funk's motion to dismiss for lack of jurisdiction because California should not assume jurisdiction under a reasonable construction of the UCCJA.[3] There was no abuse of discretion.

Finally, the recently enacted Parental Kidnapping Prevention Act reinforces the propriety of our conclusion. Enacted to provide national uniformity in determining when full faith and credit should be given to custody decisions of other jurisdictions,

---

**3.** The trial court also properly denied Funk's claim that the parties can agree on which state will exercise jurisdiction. Such a claim has previously been decided adversely to Funk. *See Campbell, supra.*

the provisions of the PKPA which affect our decision provide as follows:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

. . . .

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if

(1) such *court has jurisdiction under the law of such State; and*

. . . .

(E) the *court has continuing jurisdiction pursuant to subsection (d) of this section.*

(d) The *jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant."*

28 U.S.C. § 1738A (Supp. IV 1980) (emphasis supplied).

The PKPA sets out a clear, two-step test for determining when a state has continuing jurisdiction over custody matters: when the child or one of the contestants remains a resident of the state and the laws of the state allow them to retain jurisdiction. Indiana meets both of the criteria for maintaining continuing jurisdiction. First, Funk has continued to reside in Indiana. Second, our earlier discussion reveals that Indiana's version of the UCCJA allows the application of continuing jurisdiction. Consequently, the PKPA ensures that other jurisdictions must give full faith and credit to our custody determination because it is consistent with the terms of the federal act. *See generally Flannery v. Stephenson,* (Ala.Civ.App.1982) 416 So.2d 1034; *Kumar, supra; Bahr v. Bahr,* (1981) 108 Misc.2d 920, 442 N.Y.S.2d 687.

ISSUE TWO—Was there sufficient evidence to support the contempt conviction?

PARTIES' CONTENTIONS—Funk complains that there was insufficient evidence to support the finding that he deliberately interfered with Macaulay's custody rights. Also, he views the court's findings that he impaired the emotional development of his children and that his filing of a California modification petition was contemptuous as a deprivation of his due process rights. Macaulay responds that the record clearly supports the contempt ruling.

CONCLUSION—There is sufficient evidence to support the contempt judgment.

The trial court made the following relevant findings:

"The Court finds that the defendant in his contacts and visitation with the minor children of the parties is following a continuous course in attempting to gain custody of his children and is interfering with and interrupting the care, custody, and guidance of the plaintiff with respect to the minor children.

The Court further finds that the defendant has counseled and encouraged Michael Funk, minor child of the parties, not to attend school and that such conduct has interfered and prevented the plaintiff from requiring said minor child to attend school. The Court further finds that Michael Funk did not attend school for several weeks during January, February, and March of 1981, in spite of the plaintiff's attempts to get him to attend school.

The Court further finds that the defendant has filed a proceeding in the Superior Court of California for the County of Los Angeles, being Cause No. SWD 76194, in an attempt to seek to have that court modify the decree herein as to custody. The Court finds that such conduct on the part of the defendant is a deliberate and willful attempt to avoid complying with the orders of this Court.

The Court further finds that the conduct of the defendant has resulted in a signifi-

cant impairment of the emotional development of Michael Funk.

The Court further finds that continuation of visitation by the defendant with the minor children of the parties may significantly impair the emotional development of the minor children.

. . . .

The Court further finds that the defendant's conduct is willful and deliberate and that he is in contempt of this Court by reason thereof.

IT IS ORDERED AND DECREED that the defendant shall purge himself of his contempt by strictly complying with the orders of this Court and by ceasing instanter his interfering with the care, custody, and control of the plaintiff with respect to the minor children.

IT IS FURTHER ORDERED AND DECREED that the defendant is to show cause to this Court on Tuesday, August 4, 1981, at 1:30 P.M. why the Court should not terminate all visitation by the defendant with the minor children of the parties."

*Record* at 32–33.

 In reviewing the contempt judgment we will not reweigh evidence or judge credibility of witnesses. If the evidence and all reasonable inferences which may be drawn therefrom support the trial court's decision, that decision stands. *Slagle v. Slagle*, (1973) 155 Ind.App. 304, 292 N.E.2d 624. Testimony by Macaulay's sister established that during a visit to California in the summer of 1980, Funk called the children two to three times a day. The son told Macaulay's sister that he and his father discussed all the things they were going to do when he came back to Indiana. *Record* at 151–53. Both Macaulay's sister and mother testified as to events which occurred when they visited California in the winter of 1981. The children were calling or receiving calls from Funk at least once a day and were especially abusive to other family members after these calls. *Record* at 131, 137, 154. The son refused to attend school, and on one occasion, as Macaulay was telling her son she was going to hire a private tutor, Funk called. The son asked Funk what he thought about a tutor and after hanging up told Macaulay he refused to cooperate with a tutor. *Record* at 132–35. On another occasion, the son was overheard saying "I think we're making progress. She doesn't like me staying out of school and I think we're gonna win, and I think—will send me back to Indiana." *Record* at 137.

This evidence is sufficient to support a finding of contempt for interfering with the custodial rights of Macaulay without addressing Funk's act of filing a modification petition in California. Funk's conduct was not adequately explained so as to justify violation of the prior custody order, and the acts were clearly done willfully and deliberately. *See Isler v. Isler*, (1981) Ind. App., 422 N.E.2d 416; *Slagle, supra*.

We also need not address Funk's concerns over the trial court's issuance of a show cause hearing for possible termination of visitation rights or the court's finding that Funk's conduct had "substantially impaired" the son's emotional development. The "substantial impairment" finding was a part of the court's justification for the possibility of terminating visitation rights. However, the record fails to show that any hearing was ever held. In fact, the record clearly shows that Funk has *continued* to exercise visitation rights because he has been found in contempt for violation of visitation rights subsequent to the present cause of action. *Supplemental Record* at 229. Consequently, there is no issue as to the show cause hearing for termination of visitation rights because it is not a final, appealable order. *See In re Marriage of Miller*, (1983) 112 Ill.App.3d 203, 68 Ill.Dec. 167, 445 N.E.2d 811; *Rotheimer v. Rotheimer*, (1962) 34 Ill.App.2d 1, 180 N.E.2d 356.

Judgment affirmed.

SULLIVAN, J., concurs.

SHIELDS, J., concurs in result.