**Bonnie Sue SMITH (Mother),**
**Appellant–Petitioner,**

v.

**Ronnie Allen SMITH (Father),**
**Appellee–Respondent.**

No. 10A01–9112–CV–411.

Court of Appeals of Indiana,
First District.

June 30, 1992.

Anne B. Fowler, Jeffersonville, for appellant-petitioner.

ROBERTSON, Judge.

Bonnie Sue Smith (Mother) appeals from the trial court's determination that it had the authority to modify its previous child custody and support orders. On appeal, she claims that:

the trial court lost all or some of its jurisdiction in this cause after Mother

caused the case to be domesticated in the State of Florida.

We affirm.

The Clark County Superior Court No. 1 dissolved the parties' marriage in 1981, awarded Mother custody of the parties' minor children, and ordered Ronnie Allen Smith (Father) to pay $30 per week per child as child support. Mother subsequently moved to Florida with the children. The case was transferred to Clark County Superior Court No. 2 (the Indiana court), for reasons unrelated to this appeal; and, in 1983, the court granted Father a total of eight (8) weeks of visitation at various times during the years. Mother hindered visitation by Father and sought enforcement of the support order in the Indiana court, which found Father not to be in arrears in 1986.

Mother then filed a complaint to establish the Indiana decree as a Florida judgment in 1989 in the Circuit Court for Pinellas County, Florida (the Florida court). That court filed an ORDER DOMESTICATING FOREIGN JUDGMENT on January 9, 1990. On the same date, Father also filed a petition for citation, petition to modify, and petition to establish support status in the Indiana court. In a default judgment, the Indiana court modified custody, found Mother in contempt, and determined support arrearage on March 14, 1990. On February 26, 1991, the trial court set aside that default judgment on Mother's motion.

Meanwhile, Mother moved for contempt against Father in Florida for failure to pay child support under the Florida court's order, including medical expenses. The Florida court granted this motion on May 21, 1990 by a default judgment and entered a MODIFICATION OF FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE, which changed the child custody and child support provisions of the modified Indiana decree.

Mother moved to dismiss Father's petitions in the Indiana court. Mother claimed the Indiana court had lost all or some of its jurisdiction of the case when the Florida court had domesticated it. The parties negotiated an agreement on modification of custody and support matters in the Indiana case, but Mother specifically reserved the right to challenge the Indiana court's jurisdiction on appeal in light of the Florida court's orders. The Indiana court addressed the challenge as follows:

> The Court denies [Mother's] Motion to Dismiss and finds that Indiana now has and has never relinquished jurisdiction in this matter.

With this appeal, Mother continues her challenge to the Indiana court's jurisdiction. She claims the trial court should have granted her motion to dismiss for lack of jurisdiction because the Florida court had "assumed" jurisdiction. The parties do not dispute that the Indiana court had initial jurisdiction to determine custody. The dispute is about which court had authority to modify the Indiana decree, the Indiana court or the Florida court. Mother bases her claim upon Indiana's version of the Uniform Child Custody Jurisdiction Law, Ind.Code 31–1–11.6–1 through 31–1–11.6–25. Florida has also adopted its version of the Uniform Child Custody Jurisdiction Act at Fla.Stat. Sec. 61.1302 through 61.1348. We will refer to these pieces of legislation as the Uniform Act.

In general, the court which grants the divorce has full and continuing jurisdiction, during the minority of the children, to periodically order and modify custody. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 28. The Uniform Act has, however, given the doctrine a new twist. *Id.* When the court becomes aware of an interstate custody dispute, the court must engage in a multistep process to determine first, whether it has subject matter jurisdiction, and second, whether to exercise that jurisdiction. *Id.* at 29. The precise steps are that the court:

1) ascertain whether it has jurisdiction under I.C. 31–1–11.6–3; and, if so, then

2) determine whether there is a custody proceeding or a decree in another state which presently has jurisdiction; and, if so, the court must decline to exercise its jurisdiction under I.C. 31–1–11.6–6, but, if not, then

3) determine whether to exercise its jurisdiction because of a more convenient forum under I.C. 31–1–11.6–7.

*Id.* at 30 (quoting *Carson v. Carson* (1977), 29 Or.App. 861, 565 P.2d 763, *review allowed* (1977), 280 Or. 397, *judgment affirmed by* (1978), 282 Or. 469, 579 P.2d 846). Father's petition informed the Indiana court about Mother's complaint to establish the Indiana decree as a Florida judgment. Thereafter, the court was required to engage in the multistep process just outlined.

■ The Indiana court had jurisdiction under I.C. 31–1–11.6–3. Initially, the court was competent to decide child custody matters. *See* I.C. 33–5–10–2.5. Also, the court had jurisdiction to modify child custody under I.C. 31–1–11.6–3(a)(2) [1]. The evidence supports a determination that the best interests of the children were served when the Indiana court continued to exercise jurisdiction because, first, the children and at least one contestant, Father, had a significant connection with this state and, second, substantial evidence concerning the children's present or future care, protection, training, and personal relationships is available in Indiana.

The physical presence of the children is not a prerequisite for jurisdiction to determine their custody. I.C. 31–1–11.6–3(c). Mother does not dispute that Father is domiciled and resides in Indiana. The entire history of the case and the record of Father's support payments are kept in Indiana. Father has been entitled to visitations for eight weeks every year since 1983, even though Mother has frustrated the realization of full visitation. Also, the children's paternal grandparents and their half sister live in Indiana. These facts show that the children and Father have significant connections with Indiana.

Further, the evidence supports the conclusion that the best interests of the children were served when the Indiana court continued to exercise jurisdiction. For nine years, the parties utilized the Indiana courts for litigation of custody and visitation. Mother has frustrated visitation in the past and now appears to have shopped for a more convenient forum in hopes of further restricting Father's custody and visitation. The Florida court awarded primary custody of the children to Mother with rights of reasonable visitation to Father but also ordered that Father shall have supervised visitation of the children in the state of Florida alone. The Indiana trial court abused no discretion when it determined the children's best interests would be served to leave the dispute where it began, in Indiana. *See Funk v. Macaulay* (1983), Ind.App., 457 N.E.2d 223, 228.

The children and Father had significant connections with Indiana, and substantial evidence about the children is available in Indiana. Also, the best interests of the children were served when the Indiana trial court continued to exercise jurisdiction. The Indiana court therefore plainly had subject matter jurisdiction to modify the initial decree under I.C. 31–1–11.6–3(a)(2). We must now determine whether I.C. 31–1–11.6–6 barred the exercise of that continuing jurisdiction.

When Father filed his petitions in the Indiana court, a proceeding concerning the custody of the children was indeed pending in a court of another state which purported to presently have jurisdiction, that is, the Circuit Court of Pinellas County, Florida. Father's petition informed the Indiana court of this. At first blush, the Indiana court appears to have been required to have declined to exercise its jurisdiction under the *Carson* analysis adopted in *Clark*, 404 N.E.2d at 30 (quoting *Carson v. Carson* (1977), 29 Or.App. 861, 565 P.2d

---

**1.** Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

   *   *   *   *   *   *

  (2) it is in the best interest of the child that a court of this state assume jurisdiction because

(A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ...

763). However, I.C. 31–1–11.6–6(a) [2] requires that the other state's court not merely have jurisdiction but that it be "exercising jurisdiction substantially in conformity" with Indiana's version of the Uniform Act. The Florida statute requires the same of its courts. F.S.A. Sec. 61.1314(1). The Florida court was not "exercising jurisdiction substantially in conformity" with either Indiana's or Florida's version of the Uniform Act. The Florida court did not comply with F.S.A. Sec. 61.133:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:
>
> (a) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and
>
> (b) the court of this state has jurisdiction.

*See* I.C. 31–1–11.6–14(a).

Regardless of whether the Florida court could be said to have had jurisdiction, that court had no authority to modify the Indiana decree. A Florida court shall not modify a decree in a case such as this because the Indiana court had "jurisdiction under the jurisdictional prerequisites substantially in accordance with" the Uniform Act. Surely a court which complies with the jurisdictional requirements of the Uniform Act, embodied in I.C. 31–1–11.6–3 and F.S.A. Sec. 61.1308, has jurisdiction under the "jurisdictional prerequisites substan-

tially in accordance with" the Uniform Act. The Florida court could not properly have reached any other conclusion but that it had no authority to modify the Indiana decree because, as noted above, the Indiana court continued to meet the jurisdictional requirements of I.C. 31–1–11.6–3(a)(2). The Florida court was not "exercising jurisdiction substantially in conformity" with the Uniform Act because it purported to modify the Indiana decree when it had no authority to do so. The Florida court should have recognized and enforced the Indiana decree. *See* I.C. 31–1–11.6–13; F.S.A. Sec. 61.1328 (Recognition of out-of-state custody decrees). Therefore, the Indiana court need not have declined to exercise its jurisdiction when faced with the Florida court proceedings.

The Florida court filed its ORDER DOMESTICATING FOREIGN JUDGMENT on January 9, 1990. This is the same date that Father filed his petitions with the Indiana court. The Florida court therefore purported to assume jurisdiction when Father was making full use of the jurisdiction of the Indiana court. This is certainly not a situation where the Indiana court declined to assume jurisdiction to modify the decree. I.C. 31–1–11.6–14(a)(1); F.S.A. Sec. 61.133. As the Florida custody proceeding was not in substantial conformity with the Uniform Act, we proceed to determine whether the Indiana court properly exercised its jurisdiction in light of convenient forum provisions of I.C. 31–1–11.6–7.[3]

---

**2.** Simultaneous Proceedings in Other States. (a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

**3.** Inconvenient forum. (a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under

the circumstances of the case and that a court of another state is a more appropriate forum.

\*　\*　\*　\*　\*　\*

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) if another state is or recently was the child's home state;
(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;
(3) if substantial evidence concerning the child's present or future care, protection or training, and personal relationships is more readily available in another state;

When we reviewed the best interests of the children, we noted that, for nine years, the parties have utilized the Indiana courts for litigation of custody and visitation. Mother has frustrated visitation in the past and now appears to have shopped for a more convenient forum in hopes of further restricting Father's custody and visitation. She got those further restrictions from the Florida court, which ordered that Father shall have supervised visitation of the children in the state of Florida alone. Moreover, the children and Father have a significant connection with this state and substantial evidence about the children is available here. While the Indiana court could have found the Florida court were a more appropriate forum, it abused no discretion when it did not find itself to be an inconvenient forum and left the dispute where it began, in Indiana. *Funk,* 457 N.E.2d at 228.

Several other sources support our opinion. The Florida court will recognize *Yurgel v. Yurgel* (1990), Fla., 572 So.2d 1327. In that case, the Supreme Court of Florida noted that the Uniform Act forbids a state to modify the custody decrees of other states unless those other states no longer have, or have declined to exercise, jurisdiction. The court stated:

> [W]e cannot agree with the district court's assumption that section 61.1308 [I.C. 31–1–11.6–3] somehow operates to "automatically" terminate jurisdiction already validly acquired merely because the child has resided outside the state for more than six months when the child clearly had maintained significant contacts with Florida. To the contrary, jurisdiction must be presumed to continue once it is validly acquired under section 61.1308 [I.C. 31–1–11.6–3]; and it continues up until a Florida court expressly determines *on some other basis* that jurisdiction no longer is appropriate, until virtually all contacts with Florida have

ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA. *See* 28 U.S.C. § 1738A (1987). (Emphasis original.) In light of this decision, the Florida court should now realize that the Indiana court, not it, has the authority to modify the Indiana decree.

Further, as the commissioners' note, which accompanies section 14 of the Uniform Act (embodied in I.C. 31–1–11.6–14(a) and F.S.A. Sec. 61.133), states:

> Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of the Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [I.C. 31–1–11.6–3 and F.S.A. Sec. 61.1308]. If, however, all the persons involved have moved away or the contact with the state has become slight, modification jurisdiction would shift elsewhere.

(Citations omitted.) The comment is not dispositive of the modification issue, but it is instructive. All persons involved in this case have not moved away from Indiana, and the contact with this State has not become slight. Modification jurisdiction remains here.

Finally, as noted by the Court in *Funk,* 457 N.E.2d 223, the PKPA [Parental Kidnapping Prevention Act], the federal statute cited above by the Supreme Court of

(4) if the parties have agreed on another forum which is no less appropriate; and
(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

\*   \*   \*   \*   \*   \*

Florida, provides a clear, two-step test to determine when a state has continuing jurisdiction over custody matters:

Full faith and credit given to child custody determinations

(a) The appropriate authorities of every State shall enforce according to its terms and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

\* \* \* \* \* \*

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

\* \* \* \* \* \*

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A. Both Indiana's version of the Uniform Act and Indiana caselaw give continuing jurisdiction to the court which enters the initial child custody decree. Also, Indiana remains the residence of Father, a contestant in this case. Therefore, the modification by the Indiana court is consistent with the provisions of the federal statute. Other courts must give full faith and credit to the Indiana modification. *Funk*, 457 N.E.2d at 229. *See Thompson v. Thompson* (1988), 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512. In addition, however, the initial Indiana determination was consistent with the provisions of the federal statute because the Indiana court had jurisdiction under the laws of this State and Indiana was the home state of the children. 28 U.S.C. § 1738A(c)(1) and (2)(A)(i). The statute further provides:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A(f). Regardless of whether the Florida court had jurisdiction, Indiana had continuing jurisdiction and did not decline to exercise it to modify the initial Indiana determination. The Florida court therefore had no authority to modify the Indiana custody determination and should have given that determination full faith and credit. *See Thompson*, 484 U.S. 174, 108 S.Ct. 513.

Judgment affirmed.

BAKER and BUCHANAN, JJ., concur.