Joseph STAMBOLIJA, Jr., Appellant–Respondent Below,

v.

Joseph and Cecilia STAMBOLIJA, Appellees–Petitioners Below.

No. 64A03–9403–CV–106.

Court of Appeals of Indiana, Third District.

Nov. 22, 1994.

**6**

Clifford E. Duggan, Jr., Dull & Duggan, Merrillville, for appellant.

Alicia J. McClean, Valparaiso, for appellee.

## OPINION

STATON, Judge.

Joseph Stambolija, Jr., ("father") appeals the lower court's order granting grandparent visitation to Joseph and Cecilia Stambolija ("grandparents"). Father raises three issues on appeal, but we consider one dispositive and restate it as follows: did the lower court abuse its discretion in exercising jurisdiction over the petition for grandparent visitation. Since we decide that the lower court abused its discretion, we reverse.

Father and his two children, ages nine and eight, have resided in Michigan since 1989. Father has had custody over the children ever since the lower court dissolved his marriage to Patricia Parks ("mother") in 1988. Mother, a life-long resident of Indiana, was granted visitation rights with the children and exercised those rights until her death in December of 1993. Grandparents only access to the children was through mother's visitation. Upon mother's death, grandparents successfully petitioned the lower court

for visitation rights of their own. The lower court granted the petition without entering findings. This appeal ensued.

The parties do not dispute the lower court's initial jurisdiction to enter the divorce decree and award custody to father. This appeal centers on whether the lower court properly exercised modification jurisdiction after mother's death and in light of the father and the children living out of state since 1989. Specifically, father argues that the trial court did not have jurisdiction to hear the matter under IND.CODE § 31-1-11.6-3 (Burns Code Ed., Supp.1994).[1] This statutory section is almost identical to the Uniform Child Custody Jurisdiction Act ("UCCJA").[2]

■ Visitation rights are considered a custody matter and are, by definition, governed by the UCCJA.[3] In an interstate custody dispute, a trial court's authority to hear a matter is not directly granted by the UCCJA, rather, the Act operates to restrict the existing power of the court to hear such cases. *Roberts v. Johnson* (1993), Ind.App., 625 N.E.2d 1288, 1290. In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. *Moody v. Moody* (1986), Ind.App., 488 N.E.2d 378, 381. An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, 180.

■ In general, the court which grants a marriage dissolution has continuing jurisdiction during the children's minority to mod-

1. This section states, in part, that "[a] court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: (1) this state (A) is the home state of the child at the time of commencement of the proceeding . . .; (2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . ." I.C. 31-1-11.6-3(a).

2. Since the two are so similar, we will use "UCCJA" to refer to the Indiana statute. For a summary of the UCCJA scheme see Brigette Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 VAND.L.REV. 1207 (1969).

3. The statute states that " 'custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights. . . ." I.C. 31-1-11.6-2(2).

ify custody. *Smith v. Smith* (1992), Ind. App., 594 N.E.2d 825, 826. Under the UC-CJA, however, the court which first enters a custody decree on a matter gains exclusive jurisdiction only until the child and all parties have left the state. *Matter of Guardianship of Mayes* (1988), Ind.App., 523 N.E.2d 249, 251; *Clark v. Atkins* (1986), Ind.App., 489 N.E.2d 90, 94, *trans. denied.* As stated by this court:

> [t]he fundamental principle underlying the [UCCJA] is that once a court with a jurisdictional basis exercises jurisdiction over a "custody" issue, that court retains exclusive jurisdiction over all custody matters so long as a "significant connection" remains between the controversy and the state.... A "significant connection" remains under the scheme as long as *one parent continues to reside in the state* rendering the initial determination.

*Matter of E.H.* (1993), Ind.App., 612 N.E.2d 174, 185, *reh. denied, opinion adopted* (1993), Ind., 624 N.E.2d 471 (citations omitted, emphasis added). After mother's death in 1993, no party to the original action remained in Indiana; the children's connection with Indiana is no longer significant.

The children have spent most of their lives in Michigan. While the children have some connection to Indiana through their grandparents and the lower court, the significant-connections-test mandates that we decline to exercise jurisdiction when we are no longer the most appropriate forum to consider the children's best interests. *Mayes, supra*, at 251; I.C. 31–1–11.6–1(3). Michigan has the best access to evidence of the "child[ren's] present or future care, protection, training and personal relationships...." I.C. 31–1–11.6–3(a)(2)(B).[4] This determination is consistent with the intent of the significant-connection-test to limit jurisdiction rather than proliferate it. *Mayes, supra*, at 252.

Since Michigan is clearly the proper state in which to seek visitation rights, the lower court abused its discretion in exercising jurisdiction. We reverse and remand to the lower court for action not inconsistent with the UCCJA and this opinion.

Reversed.

HOFFMAN and GARRARD, JJ., concur.

---

4. The entire statute should be construed according to its statement of purpose. Among the stated purposes are

"[a]ssur[ing] that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state...."