**Dina A. ASHBURN, Appellant–Respondent,**

v.

**Bryan D. ASHBURN, Appellee–Petitioner.**

No. 34A04–9504–CV–117.

Court of Appeals of Indiana.

Feb. 15, 1996.

Transfer Denied May 22, 1996.

Ronald L. Hoppes, Lafayette, for appellant.

William C. Menges, Jr., Kokomo, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Respondent–Appellant, Dina Ashburn ("Mother"), challenges the jurisdiction of the trial court with regard to an order of child custody. We affirm.

### Issue

Mother presents one issue for our review, which we restate as: whether the trial court had jurisdiction to rule on the Petition for Custody filed by Petitioner–Appellee, Bryan Ashburn ("Father").

### Facts and Procedural History

The trial court's Statement of Evidence indicates that Mother and Father were married and resided together with their child in California. Father, originally from Indiana, moved to Indiana in January, 1993. In March, 1993, Mother, without notifying father, took the child and moved to Oregon. Father did not learn of their whereabouts until October, 1993, at which time Mother allowed Father to take the child for a one-month visit to Indiana. Father filed his petition for divorce and child custody nearly two weeks later. The trial court granted Father custody of the child and granted Mother reasonable visitation privileges. Although Mother did not file her own action for custody in Oregon, she challenges the Indiana court's jurisdiction over the matter.

### Discussion and Decision

The issue before us today is whether one parent can gain home state jurisdictional advantage under the UCCJA by taking a child and hiding for six-months in a state unknown to the other parent. Mother appeals the trial court's grant of custody to Father on jurisdictional grounds. She argues that the trial court did not have jurisdiction under the Uniform Child Custody Jurisdiction Act. I.C. 31–1–11.6–1, et seq. ("UCCJA"). It is Mother's position that Oregon was the home state of the child when Father requested custody in Indiana. Although the trial court did not expressly state such, it appears from the Statement of Facts and Order of Dissolution that the trial court used the "significant connections" and "best interest of the child" tests in reaching its decision.

The threshold issue, then, is whether the trial court correctly applied the "significant connections" and "best interest of the child" tests or whether the child's home state was Oregon. While it is true that the child resided in Oregon for six months prior to Father taking the child to Indiana, the particular facts of this case call into question whether that six month residency can be counted toward time in a home state under the UCCJA.

We noted in *Ruppen v. Ruppen*, 614 N.E.2d 577, 580 (Ind.Ct.App.1993):

The National Conference of Commissioners on Uniform State Laws adopted the Uniform Child · Custody Jurisdiction Act (UCCJA) in 1968 to remedy the "intolerable state of affairs [in child custody disputes] where self-help and the rule of 'seize-and-run' prevail[ed] rather than the orderly processes of the law." 9 U.L.A. 117 (1988) (prefatory note).

Registering similar concerns, the Indiana General Assembly adopted its version of the UCCJA ... in 1977. 1977 Ind.Acts Pub.L. No. 305, § 1 et seq.; IND. CODE 31–1–11.6–1 et seq. The UCCJL's stated purposes include, in part, the avoidance of competition among jurisdictions and conflict with courts of other states in matters of child custody, the promotion of interstate cooperation so that custody decrees will be rendered in the state best able to decide the case in the interest of the child, and the deterrence of abductions and other unilateral removals of children undertaken to obtain custody awards. IND.CODE 31–1–11.6–1(a)(1), (2), and (5).

Thus, there are two stated purposes behind the UCCJA: first, to discourage child abductions in the name of child custody disputes, and, second, to improve comity between states with regard to matters of child custody. Mindful of the UCCJA's general

purposes, we now address the merits of Mother's appeal.

■ The UCCJA sets out the method to determine jurisdiction. *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind.1990). Rather the statute merely operates to restrict the existing power of courts to hear custody cases. *Id.* Under the UCCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Id.* at 581. The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.* In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. *Moody v. Moody*, 488 N.E.2d 378, 381 (Ind.Ct.App.1986). An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

The UCCJA states, in relevant part:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before the commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this state of the child, or of the child and one [1] of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

I.C. 31–1–11.6–3.[1]

Additionally, I.C. 31–1–11.6–2(5) defines "home state" as "the state in which the child, immediately proceeding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months or periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period." "By definition, if the child has a 'home state' other than Indiana, jurisdiction may not be had in Indiana under [section] 3(a)(4) unless the home state has declined its jurisdiction." *Horlander v. Horlander*, 579 N.E.2d 91, 95 (Ind.Ct.App.1991), *reh. denied, trans. denied.* Moreover, it is only when the "home state" test does not apply to the facts that the "significant connection" test found in I.C. 31–1–11.6–3(a)(2) may be used to provide an alternative basis for subject matter jurisdiction. *Id.* at 97.

■ The trial court properly exercised jurisdiction for several reasons. First, Mother did not challenge the trial court's jurisdic-

---

1. During the pendency of this action, IC 31–1–11.6–3 was amended by P.L. 79–1994, § 4, effective July 1, 1994.

tion with regard to the decree of dissolution. In general, the court which grants a marriage dissolution has continuing jurisdiction during the children's minority to modify custody. *Stambolija v. Stambolija,* 643 N.E.2d 5 (Ind.Ct.App.1994); *Smith v. Smith,* 594 N.E.2d 825, 826 (Ind.1992). Under this ruling, because the trial court's jurisdiction with regard to the dissolution remains unchallenged, its jurisdiction over the child custody matter cannot be bifurcated and challenged independently. Second, in his original pleading, Father apprised the trial court that there was an interstate matter before the court. Absent evidence that the trial court did not meet its duty of inquiry with regard to jurisdiction, there is a presumption in favor of the trial court that it conducted a jurisdictional inquiry. Third, the trial court was not called to weigh competing state interests because no other custody action has been initiated in either Oregon or California.

Finally, and most important, Mother bases her argument on the fact that Father misrepresented his intention to return the child to Oregon. At the time Father took the child, Mother and Father were still married and both parents were presumptively equally entitled to the physical custody of the child. Mother had previously taken the child to Oregon without apprising Father of the child's whereabouts. Mother cannot gain "home state" jurisdictional advantage by the hand of her own deception.

■ Father committed no wrongdoing in terms of this custody dispute when he left Mother and child in California. Albeit, Father did lead Mother to believe he would return the child to Oregon after a short visit to Indiana, he never hid the child from Mother. That Father did not reveal his intention to file for custody in Indiana does not somehow negate his jurisdictional claim. Unlike Mother, he in no way gained the jurisdictional home state advantage through his acts of dishonesty. Instead, he asserted jurisdiction on the grounds of what is in the best interest of the child. Because Mother does not challenge the trial court's findings with regard to the best interests of the child and significant connections, we leave those findings undisturbed. When the home state of a child may

be determined only after one parent has hidden the child from the other parent in another state for six months, there is no "home state" for purposes of determining jurisdiction under the UCCJA. Accordingly, the trial court did not abuse its discretion in exercising jurisdiction in this matter.

Affirmed.

RILEY, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The majority opinion concludes that Dina Ashburn became a culpable wrong-doer when, in March 1993, she and her child moved from California to Oregon. The fact is, however, that Bryan Ashburn left his wife and child in January 1993 and removed to Indiana. Subsequently, by misrepresentation, Bryan obtained the child, presumably for a one-month visit, and returned to Indiana where within two weeks, he thereupon filed the dissolution petition and the request for custody. Bryan admitted that he never intended to return the child to the mother and that he did in fact misrepresent his intentions to Dina.

The child did not live in Indiana with his father for at least six months prior to the filing of the petition. To the contrary, under the circumstances of his removal from Oregon to Indiana, the former state must be considered to have remained the child's home state under the UCCJA. The Act specifically provides that mere physical presence within a state is not sufficient to confer custody jurisdiction. More importantly it dictates a conclusion that Oregon was the appropriate jurisdiction because it had been the child's home state within six months prior to the commencement of the proceeding and the child was only absent from Oregon because of his removal by a person claiming custody. I.C. 31–1–11.6–3.

Given the undeniable fact that Oregon was an appropriate forum, if not *the* appropriate forum, for an initial custody determination, Indiana might be considered to have exercisable jurisdiction only if it fell within

the purview of the UCCJA. Examination of the statute shows that this case does not fall within the statute. Although it could be argued that Indiana might exercise jurisdiction in "the best interest of the child" because the child and the father "have a significant connection with" Indiana, the fact remains that the trial court did not make such determination.[2] Furthermore, even if it had done so, the "significant connection" test is only applicable when "the 'home state' test does not apply to the facts." *Horlander v. Horlander* (1991) Ind.App., 579 N.E.2d 91, 97, *trans. denied.* Because Oregon was the child's home state and because Dina remained in Oregon, it would not be appropriate to use the "significant connection" test to justify an Indiana custody determination. *Horlander, supra; In re Marriage of Hudson* (1982) Ind.App., 434 N.E.2d 107.

The majority seems to premise its decision, in large measure, upon the principle that because Indiana had jurisdiction to dissolve the marriage it necessarily had jurisdiction to determine custody. I disagree. Neither case cited by the majority supports the principle. *Stambolija v. Stambolija* (1994) Ind.App., 643 N.E.2d 5, involved a modification of a custody decree originally entered in an Indiana dissolution with all parties being Indiana residents. The father was granted custody and thereafter moved with the child to Michigan. The court observed that Indiana has continuing jurisdiction to modify a custody order, but that the visitation petition of the grandparents should not have been determined in Indiana because although there was some connection with the child in Indiana, Michigan was the "most appropriate forum", and that therefore the Indiana trial court abused its discretion in exercising jurisdiction. In *Smith v. Smith* (1992) Ind.App., 594 N.E.2d 825, the Indiana parties obtained a 1981 dissolution and an order awarding custody to the mother. She thereafter moved to Florida but the father remained in Indiana. This court held that Indiana had

continuing jurisdiction to modify custody. The two cases do not concern an initial custody determination involving an interstate dispute.

Be that as it may, I take issue with the majority's unsupported statement that when there is a dispute with a court's custody jurisdiction, failure to attack jurisdiction over the dissolution itself precludes a separate attack upon the custody jurisdiction or bifurcation of the proceedings. Although there may be a degree of inconvenience and/or duplication, given the purposes of the UCCJA, there is nothing questionable about such a procedure. *Horlander v. Horlander,* *supra*, (Sullivan, J., dissenting) 579 N.E.2d at 99; *In re Marriage of Cline* (1982) Ind.App., 433 N.E.2d 51.

Because at the time this proceeding was brought Oregon was the home state of the child, I would reverse and remand with instructions to vacate the custody award.

---

**2.** The trial court did make several findings which reflected that Dina's residential circumstances were far less stable than those of Bryan; that she had not maintained steady employment although Bryan had done so; and that Dina had a criminal history. Although these factors might well lead to a conclusion that custody by Bryan would be in the best interest of the child, such does not justify the exercise of jurisdiction.