**Donna Neel RUPPEN, Appellant–Petitioner,**

v.

**Roberto C. RUPPEN, Appellee–Respondent.**

**No. 22A01–9212–CV–427.**

Court of Appeals of Indiana, First District.

May 25, 1993.

Earl C. Mullins, Jr., Evans, Bishop, Masters & Mullins, Clarksville, for appellant-petitioner.

Dennis R. Tackett, Tackett, Taurman & Sonne, New Albany, for appellee-respondent.

BAKER, Judge.

Petitioner-appellant Donna Neel Ruppen appeals the trial court's conclusion it did not have jurisdiction to determine child custody and support. She also appeals the court's grant of writ of habeas corpus giving physical custody of the Ruppens' two minor children to respondent-appellee Roberto C. Ruppen.

Donna raises six issues for our review, which we consolidate and restate as:

I. Whether the trial court properly concluded a foreign sovereign, in this case, Italy, is a "state" under Indiana's Uniform Child Custody Jurisdiction Law (UCCJL).

II.   Whether the trial court properly concluded it had jurisdiction to hear Roberto's petition for writ of habeas corpus, and whether it properly granted the petition and ordered Donna to transfer the children's physical custody to Roberto.

## FACTS

Donna, a United States citizen, and Roberto, an Italian citizen, married on October 27, 1987, in Floyd County, Indiana. Soon after their wedding, Donna and Roberto moved to Macugnaga, Novara, Italy, where a second wedding ceremony was performed in April of 1988.   Two living children were born of the Ruppens' marriage: Adriana, born December 14, 1987; and Veronica, born October 2, 1990.   Although both girls enjoy dual Italian and American citizenships, they have always lived in Italy.   Their contact with the United States has been limited to summer vacations visiting their maternal grandparents in Floyd County, Indiana.

This dispute began with the 1992 trip to Indiana.   When Donna left Italy with the girls on May 26, 1992, she intended to stay in Indiana, satisfy Floyd County's statutory residency requirements, and then seek dissolution of her marriage to Roberto. Roberto learned of Donna's plan when she did not return to Italy at the end of summer.   He traveled to Indiana to persuade Donna to return with him, or at least to permit him to take the children back to Italy.   His pleas went unheeded.

On August 31, 1992, Donna filed a verified petition for custody and child support in the Floyd Superior Court and sought a temporary restraining order against Roberto.   At that time, Donna and the children had been in Indiana 97 days.   The next day, Roberto petitioned for a writ of habeas corpus seeking physical custody of his daughters so that custody could be determined in Italy.   Roberto also filed a motion to dismiss Donna's petition for custody.

The trial court heard Roberto's petition for a writ of habeas corpus on September

2, 1992.   Following the hearing, the trial court dismissed Donna's custody and child support petition for lack of jurisdiction and ordered Donna to transfer physical custody of the two young girls to Roberto so he could take them back to Italy for a custody determination.   Donna gave the children to Roberto as ordered, and Roberto and the children returned to Italy that same day. Donna now appeals the trial court's order dismissing her petition for custody and child support and requiring her to transfer physical custody of the children to Roberto.

## DISCUSSION AND DECISION

### I

*Custody Determination*

(a) The UCCJA and UCCJL Generally [1]

The National Conference of Commissioners on Uniform State Laws adopted the Uniform Child Custody Jurisdiction Act (UCCJA) in 1968 to remedy the "intolerable state of affairs [in child custody disputes] where self-help and the rule of 'seize-and-run' prevail[ed] rather than the orderly processes of the law."   9 U.L.A. 117 (1988) (prefatory note).

Registering similar concerns, the Indiana General Assembly adopted its version of the UCCJA, the Uniform Child Custody Jurisdiction Law (UCCJL), in 1977.   1977 Ind.Acts Pub.L. No. 305, § 1 *et seq.;* IND. CODE 31–1–11.6–1 *et seq.*   The UCCJL's stated purposes include, in part, the avoidance of competition among jurisdictions and conflict with courts of other states in matters of child custody, the promotion of interstate cooperation so that custody decrees will be rendered in the state best able to decide the case in the interest of the child, and the deterrence of abductions and other unilateral removals of children undertaken to obtain custody awards.   IND. CODE 31–1–11.6–1(a)(1), (2), and (5).

■   Under the UCCJL, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an in-

---

**1.**  The Parental Kidnapping Prevention Act of 1980 (PKPA) is the federal response to jurisdictional conflicts in custody disputes.   28 U.S.C.A.   § 1738A.   *See In re E.H. and L.H.* (1993), Ind. App., 612 N.E.2d 174.

terstate dimension in a child custody dispute. *Horlander v. Horlander* (1991), Ind. App., 579 N.E.2d 91, 95, *trans. denied.* The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.* The UCCJL has international application, as well. *Id.;* IND.CODE 31–1–11.6–23. The extent of its international application is the subject of this appeal. Mindful of our duty to promote the UCCJL's general purposes, we now address the merits of Donna's appeal. *See* IND.CODE 31–1–11.6–1(b).

### (b) Jurisdiction

Donna first argues the Floyd Superior Court erred when it concluded it did not have jurisdiction to decide the custody of her Italian-born children.

The determination of whether an Indiana court has jurisdiction in an interstate custody proceeding is controlled by IND.CODE 31–1–11.6–3, which provides, in relevant part:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

\*   \*   \*   \*   \*   \*

(4)(A) it appears that no other state would have jurisdiction under prerequi-

sites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

■ As referenced in paragraph (1) above, a child's "home state" is "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months.... " IND.CODE 31–1–11.6–2(5). Only when a child does not have a "home state" may the court apply the "significant connection" test under IND.CODE 31–1–11.6–3(a)(2) to determine its jurisdiction. *Williams v. Williams* (1993), Ind.App., 609 N.E.2d 1111, 1113. Likewise, by definition, if the child has a "home state" other than Indiana, jurisdiction may not be had in Indiana under IND.CODE 31–1–11.6–3(a)(4) unless the home state has declined its jurisdiction.

In this case, no one disputes that Indiana is not the children's "home state." Although the Ruppen children have vacationed in Floyd County during the summer months, they have never lived in Indiana for a six-month period, including the six-month period immediately preceding the custody dispute. Nonetheless, Donna argues Indiana had jurisdiction to determine custody due to the children's significant connection with Indiana, pursuant to IND. CODE 31–1–11.6–3(a)(2), or because no other state would have jurisdiction, pursuant to IND.CODE 31–1–11.6–3(a)(4). Her arguments are dependent on whether Italy, a foreign sovereign, is a "state," as that term is used in the UCCJL, and whether it is the Ruppen children's "home state." Cognizant that the Indiana General Assembly intended the UCCJL to have international application, *see* IND.CODE 31–1–11.6–23, we first analyze Italy's status under the Law.

■ The UCCJL defines "state" as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico,

and the District of Columbia." IND.CODE 31–1–11.6–2(10). Under this definition, Italy is not a "state." Neither is it a "home state," although this result seems startling under the facts before us: the Ruppen children were born in Italy and have continuously resided in Italy throughout their young lives. There is no question substantial evidence concerning the children's present and future care, protection, training, and personal relationships all exist in Italy. *See Horlander, supra,* at 98.

The basic policies of avoiding jurisdictional conflict and multiple litigation simply are not served when the jurisdiction of foreign sovereigns to decide child custody is systematically ignored. Furthermore, abductions and other unilateral removals of children are no less harmful in an international arena than in an interstate setting. Assuming jurisdiction after a child has been wrongfully brought to, or detained in, Indiana only rewards the very behavior the UCCJL seeks to eliminate. On the other hand, the incentive to "snatch" one's child is diminished when the trial court recognizes that a child's home state may be a foreign sovereign, and declines jurisdiction accordingly. *See Brown v. Tan* (1981), Fla. App., 395 So.2d 1249, 1252 (Florida lacked jurisdiction to decide custody where there was no question Republic of Singapore was the child's home, not Florida); *Middleton v. Middleton* (1984), 227 Va. 82, 314 S.E.2d 362 (notwithstanding the UCCJA's definition of "state," general purposes of the Act mandate recognizing England as the child's "home state").

■ Our broad interpretation of "state" under the UCCJL is further compelled by principles of comity, which favor recognition of a foreign sovereign's jurisdiction and subsequent child custody decree. *See In re Silvestri–Gagliardoni* (1989), 186 Ill.App.3d 46, 51, 134 Ill.Dec. 106, 110, 542 N.E.2d 106, 110. Principles of comity are not absolute, however.[2] The

foreign sovereign must provide all interested persons "reasonable notice and opportunity to be heard" before its jurisdiction will be recognized and its decree held valid. IND.CODE 31–1–11.6–23; *see also In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India v. Union Carbide Corp.* (2d Cir.1987), 809 F.2d 195, *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150; *Lotte U. v. Leo U.* (1985), 128 Misc.2d 896, 491 N.Y.S.2d 581 (refusal to recognize a foreign sovereign's jurisdiction held proper when the sovereign failed to provide the parties due process). Although foreign sovereigns are bound by their own laws, and not the UCCJA or UCCJL, they must operate under a civilized jurisprudence to gain recognition under comity. *Hunt v. BP Exploration Co. (Libya) Ltd.* (N.D.Tex.1980), 492 F.Supp. 885, 894. Decrees rendered under circumstances which offend a state's public policy may properly be rejected. *See Christopher v. Christopher* (1944), 198 Ga. 361, 31 S.E.2d 818; *Greschler v. Greschler* (1980), 51 N.Y.2d 368, 434 N.Y.S.2d 194, 414 N.E.2d 694. The party seeking to avoid a foreign sovereign's jurisdiction or entry of decree must prove either lack of jurisdiction or denial of notice and opportunity to be heard. *Rediker v. Rediker* (1950), 35 Cal.2d 796, 221 P.2d 1; *DeYoung v. DeYoung* (1946), 27 Cal.2d 521, 165 P.2d 457.

■ Having concluded Italy was a "state" for purposes of the UCCJL, we also conclude it was the Ruppen children's "home state" pursuant to IND.CODE 31–1–11.6–2(5). As such, Donna's avenues for establishing Indiana's jurisdiction were greatly diminished. She had to show either that Italy did not have jurisdiction to determine child custody under its own laws or that she would be denied due process if forced to litigate custody in an Italian forum. *See Rediker, supra; DeYoung, supra.* Donna failed to make either show-

2. As described in *Black's Law Dictionary* 334 (4th ed. 1968):

[Comity] is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and dis-

couraging repeated litigation of the same question. But its obligation is not imperative. Comity persuades; but it does not command. (Citing *Mast, Foos & Co. v. Stover Manufacturing Co.* (1900), 177 U.S. 485, 488, 20 S.Ct. 708, 710, 44 L.Ed. 856, 858).

ing.[3]  Because jurisdiction to decide custody was with Italy, the Floyd Superior Court properly concluded it did not have jurisdiction.  *See* IND.CODE 31–1–11.6–3.

## II

### *Writ of Habeas Corpus*

Finally, Donna argues the trial court erred when it (1) concluded it had jurisdiction to hear Roberto's petition for a writ of habeas corpus, and (2) granted the petition ordering her to return physical custody to Roberto so he could take the children to Italy for a custody determination in an Italian forum.

### (a) Mootness

Roberto does not raise mootness as a defense to Donna's appeal.  Because the children, who are now in Italy, are out of reach of the Indiana court, we address the issue *sua sponte.*

■  An appeal becomes moot when: (1) it is no longer "live" or when the parties lack a legally cognizable interest in the outcome; (2) the principal questions in issue have ceased to be matters of real controversy between the parties; or (3) the court on appeal is unable to render effective relief upon the issue.  *Roark v. Roark* (1990), Ind.App., 551 N.E.2d 865, 867 (citations omitted).  This court will address an otherwise moot issue only when "the issue involves a question of great public importance which is likely to recur in a context which will continue to evade review."  *In re Stariha* (1987), Ind.App., 509 N.E.2d 1117, 1123.

■  In this case, the issues of whether the trial court erred when it assumed jurisdiction and granted Roberto's petition for a writ of habeas corpus are moot because the children are now in Italy and are out of

reach of the Indiana court.  Even if the Floyd Superior Court did not have jurisdiction or the order was erroneous, reversal by this court would have no effect on the status quo.  *See Id.* at 1123 (holding that "we will not reverse a trial court's determination 'where absolutely no change in the status quo will result.' ").  We consider these issues to be of great public importance, however, and because the grant of such writs will continue to evade review, we choose to address the merits of Donna's arguments.

### (b) Habeas Corpus Jurisdiction

■  Jurisdiction to grant a petition for a writ of habeas corpus is conferred under IND.CODE 31–1–57–3, which provides, in relevant part:

Writs of habeas corpus may be granted by the circuit or superior courts of the county in which the person applying therefor may be restrained of his or her liberty, or by the judges of said courts....

A habeas corpus proceeding under IND. CODE 34–1–57–25 [4] is the proper procedure to obtain custody of a child wrongfully held.  *Scott v. Scott* (1949), 227 Ind. 396, 86 N.E.2d 533; *Ortega v. Ortega* (1974), 161 Ind.App. 244, 315 N.E.2d 370.

■  Although we have concluded Indiana did not have jurisdiction to decide custody in this case, the lack of jurisdiction did not affect the Floyd Superior Court's jurisdiction to issue a writ of habeas corpus for wrongful restraint in Floyd County.  *See Brown v. Tan* (1981), Fla.App., 395 So.2d 1249, 1252 (although trial court was without jurisdiction to determine child custody, grant of habeas corpus ordering return of physical custody to restore the status quo was proper); *see also Crane v. Hayes* (1971), Fla., 253 So.2d 435, 439 (ha-

---

**3.**  The Appellate Court of Illinois declined jurisdiction to determine custody in favor of an Italian forum in *In re Silvestri–Gagliardoni, supra,* where the parties' marital residence was in Milan, Italy.  The court found nothing in the record to suggest the Italian forum did not proceed under a civilized jurisprudence, or that the mother would suffer any prejudice there.

**4.**  IND.CODE 34–1–57–25 provides:

Writs of habeas corpus shall be granted in favor of parents, guardians, and spouses, to enforce the rights and for the protection of minors and incapacitated persons whose incapacity is not caused only by a physical illness, impairment, or infirmity (as defined in IC 29–3–1–7.5).  The proceedings shall, in all cases, conform to the provisions of this chapter.

beas corpus proceeding is an independent civil action). The trial court did not err when it entertained Roberto's habeas corpus petition.

### (c) Habeas Corpus Relief

Donna also challenges the trial court's order commanding her to transfer physical custody of the minor children to Roberto. The court ordered the transfer of physical custody

> for the purpose of returning said children to Italy, their home country, in order to effect a proper determination of custody in the proper forum, [the Floyd Superior] Court being without jurisdiction to make a final determination regarding the legal custody of said minor children due to the lack of residency of either of the parties herein.

*Record* at 70.

▆ The grant of habeas corpus relief will be reviewed only for an abuse of discretion. *Henderson v. Kleinman* (1953), 231 Ind. 657, 663, 109 N.E.2d 905, 907. Without reweighing the evidence, this court considers only that evidence most favorable to the judgment and reasonable inferences drawn therefrom to determine whether sufficient evidence sustains the decision. *Hyatte v. Lopez* (1977), 174 Ind. App. 149, 151, 366 N.E.2d 676, 678.

Donna challenges the trial court's grant of habeas corpus relief upon two grounds. First, she contends the trial court erred when it ordered her to give physical custody to Roberto because, in the absence of an existing custody order, Roberto and Donna had equal rights to custody. Donna also argues the court's order amounted to a determination of custody in violation of procedural safeguards and statutory guidelines.[5] Specifically, she challenges the grant of habeas corpus relief on the grounds the court failed to consider the best interests of the children, as required by IND.CODE 31-1-11.5-21, and failed to give her an opportunity to be heard, in violation of her due process rights. *See Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310, 313 ("[a]n opportunity to be heard is essential before a parent can be deprived of custody").

▆ Under authority of IND.CODE 34-1-57-25, the court shall grant habeas corpus relief "in favor of parents, guardians, and spouses, to enforce the rights and for the protection of minors[.]" Absent an existing custody order redistributing custody rights, the trial court must presume parents are equally entitled to custody when addressing custody issues. *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551, 554; *see also* IND.CODE 31-1-11.5-21 (when determining custody "there shall be no presumption favoring either parent."). When there is no existing custody order or pending custody proceeding, the court's grant of habeas corpus relief in favor of one parent over the other violates the presumption of equal rights codified at IND.CODE 31-1-11.5-21. *Cf. In re Lemond* (1980), 274 Ind. 505, 511, 413 N.E.2d 228, 233 (transfer of physical custody from father to mother pursuant to custody order entered in Hawaii was to be achieved through a writ of habeas corpus). As between parents who are presumed to have equal rights to custody, habeas corpus relief simply is not available to circumvent the jurisdictional limits and procedural safeguards imposed upon child custody determinations by IND.CODE 31-1-11.5 *et seq.* and the UCCJL. When a custody order has not been entered and a custody proceeding is not pending, parents may not look to habeas corpus proceedings to have their custody rights decided.

▆ In this case, no custody order had been entered and no custody proceeding was pending in Italy or elsewhere when the trial court granted Roberto habeas corpus relief and ordered Donna to give him physical custody of the children. In the absence of a custody order or pending proceeding, Donna and Roberto had equal rights to

---

**5.** Donna correctly observes that a habeas corpus proceeding need not be limited to determining whether a parent has detained a child illegally. In *Ortega, supra,* for example, we concluded the trial court properly expanded the father's habeas corpus petition to consider whether changed circumstances warranted modification of the Ortegas' custody order.

decide whether the children would stay in Indiana or return to Italy. We do not condone Donna's tactics of traveling to Indiana with the children under the pretense of visiting the children's grandparents, and then, with the children safely out of Roberto's reach, refusing to return to Italy. Nonetheless, the trial court had no authority to direct a change in the existing status quo, regardless of our opinion of that status quo. Roberto had to look to Italy for a determination of custody. The grant of habeas corpus relief was erroneous.

## CONCLUSION

The trial court properly concluded it did not have jurisdiction to determine the Ruppen children's custody, but that it did have jurisdiction to hear Roberto's habeas corpus petition. The trial court erred, however, when it granted Roberto habeas corpus relief and ordered Donna to transfer physical custody to Roberto. Because Donna complied with the order and the children have returned to Italy, we do not have any effective or practical means of remedying the error. We must therefore affirm the trial court's judgment. *See In re Utley* (1991), Ind.App., 565 N.E.2d 1152, 1157.

Affirmed.

NAJAM and GARRARD, JJ., concur.