**Leslie ORTMAN, Appellant–Defendant,**

**v.**

**Duff K. ORTMAN, Appellee–Plaintiff.**

No. 15A01–9512–CV–403.

Court of Appeals of Indiana.

Oct. 7, 1996.

Rehearing Denied Dec. 11, 1996.

Melinda O'Dell–Stasek, Indianapolis, for appellant–defendant.

Jean M. Geoppinger, Graydon, Head & Ritchey, Cincinnati, Ohio, Michael R. Barrett, Barrett & Weber, Cincinnati, Ohio, William R. Pfister, Sr., Pfister Law Office, Lawrenceburg, for appellee–plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Leslie Ortman ("Mother") appeals from the trial court's order which granted permanent custody of Jay Ortman ("Jay") to his father, Duff Ortman ("Father"). Mother presents two issues for our review which we consolidate and restate as whether the trial court abused its discretion when it exercised jurisdiction over the custody proceedings.

We affirm.

### FACTS

Father and Mother were married on May 3, 1980. Their only son, Jay, was born on November 30, 1982. On July 18, 1989, Father filed his petition for Dissolution of Marriage in the Dearborn Circuit Court. At that time, Father also filed a petition requesting custody of Jay which was granted by the trial court that same day. Mother then took Jay and left the marital residence. Father was unable to contact Mother and was unaware of Jay's whereabouts for the next three years.

Mother was served notice of the dissolution proceeding by publication, but failed to appear for the dissolution hearing. On December 11, 1989, the Dearborn Circuit Court granted Father's petition for dissolution. Jay was made a ward of the State, and Mother was ordered to surrender the child to the Department of Public Welfare within 30 days. Mother failed to comply with the court's order. Mother filed her pro se motion for change of custody and claimed that she had been unaware of the prior proceedings. She further requested a hearing to present evidence and directed the court to send correspondence to her father, Gerald Heinze. The court did not respond to this motion and subsequently issued an Amended Order on July 15, 1991, which directed Father to take physical custody of Jay when and if he could be found, and to bring the child before the court to resolve the matter of permanent custody. Father moved to Lexington, Kentucky in 1991.

On July 10, 1992, Mother and Jay were located in Tennessee, and pursuant to the Dearborn Circuit Court order, Father took physical custody of Jay that same day and brought Jay to his home in Lexington, Kentucky. Three days later, Father brought Jay before the Dearborn Circuit Court, where he requested and was granted temporary custody of Jay. On October 19, 1992, Father filed his "Motion for Permanent Custody," and Mother filed a "Motion for Relief from Order and Cross Petition for Custody." No action was taken on these motions.

Then, on February 21, 1995, Mother filed a "Motion for Court to Accept Jurisdiction" in the Fayette County Circuit Court in Kentucky. Father filed a "Notice of Filing of Kentucky Action" in the Dearborn court. The Kentucky court held a hearing, and took the matter under advisement pending communication with the Indiana court. The Dearborn Circuit Court, after consulting with the Honorable Mary C. Noble, Judge of the Circuit Court in Lexington, Kentucky, issued an order retaining jurisdiction. After a hearing, the court granted Father sole custody of Jay, and Mother was granted "strictly supervised visitation" rights. The court also determined that Father was a resident of Ken-

tucky and Mother was a resident of Ohio and transferred any further proceedings to the Fayette County Circuit Court in Kentucky. Mother now appeals.

## DISCUSSION AND DECISION

### Jurisdiction

Mother contends that the trial court lacked jurisdiction to make custody decisions regarding Jay. Specifically, she asserts that the trial court failed to make the proper inquiry pursuant to the Uniform Child Custody Jurisdiction Law ("UCCJL") and, further, had the court made the proper inquiry, it would have concluded that Kentucky was the proper forum for this case. We cannot agree.

■ In determining whether a trial court has improperly exercised jurisdiction under the UCCJL, we apply an abuse of discretion standard. *Stambolija v. Stambolija,* 643 N.E.2d 5, 6 (Ind.Ct.App.1994). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The court also abuses its discretion when it misinterprets or misapplies the law. *Id.*

■ The UCCJL sets out the method to determine jurisdiction. *Ashburn v. Ashburn,* 661 N.E.2d 39, 41 (Ind.Ct.App.1996), *trans. denied.* If the court becomes aware at the outset of the proceedings that the custody dispute has an interstate dimension, it must make a determination of subject matter jurisdiction pursuant to the UCCJL. *Clark v. Clark,* 404 N.E.2d 23, 29 (Ind.Ct.App.1980). The trial court must first determine whether it has jurisdiction, and, if so, whether to exercise that jurisdiction. *Stephens v. Stephens,* 646 N.E.2d 682, 685 (Ind.Ct.App.1995).

■ The determination of whether an Indiana trial court has jurisdiction in an interstate custody proceeding is controlled by the UCCJL. IND. CODE § 31–1–11.6–1 *et seq.* The UCCJL does not directly grant authority to hear custody cases. *Stephens,* 646 N.E.2d at 685. Rather, it operates to restrict the existing power of the court to hear custody cases. *Id.* Relevant portions of the UCCJL provide:

Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) has been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

*     *     *     *     *

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IND. CODE § 31–1–11.6–3.

Inconvenient Forum. (a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

IND. CODE § 31–1–11.6–7.

### Jurisdiction in 1992

Neither party disputes that the Dearborn Circuit Court had subject matter jurisdiction to determine custodial rights in 1989 when Father filed the petition for dissolution and his initial petition for custody of Jay. Indiana was Jay's "home state" at that time.

"Home state" means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period.

1. We note that Mother did not file any motion with the Dearborn Circuit Court contesting its jurisdiction in 1992. However, the Dearborn Circuit Court was aware that Father lived in Kentucky and that Mother's agents were in Ohio.

IND. CODE § 31–1–11.6–2(5). Mother correctly points out that on July 13, 1992, when the Dearborn Circuit Court granted Father temporary custody of Jay, Father resided in Kentucky and Mother was living with her parents in Ohio. Mother argues that the Dearborn Circuit Court had an affirmative duty to re-evaluate its subject matter jurisdiction in 1992 and that at that time, Indiana was no longer Jay's home state. She thus concludes that the Dearborn Circuit Court abused its discretion when it exercised subject matter jurisdiction in 1992.

■ We agree with Mother that the Dearborn Circuit Court was aware of the interstate dimension of the case in 1992 and had an affirmative duty to determine subject matter jurisdiction after Jay was found and returned to Father.[1] As we stated in *Clark*, a "court may have a further duty to redetermine the matter of jurisdiction at some later stage in the proceedings." *Clark*, 404 N.E.2d at 29. However, absent evidence that the trial court failed to make such an inquiry, there is a presumption in favor of the trial court that it conducted a jurisdictional inquiry. *Ashburn*, 661 N.E.2d at 41.

■ Here, Mother failed to present any evidence that such an inquiry was not made in 1992. Although Mother correctly points out that Father had moved to Kentucky before July of 1992, we cannot agree that Jay's home state changed from Indiana to Kentucky or that Jay did not have a home state when he was discovered in 1992. Subject matter jurisdiction is conferred on a court if Indiana is the "home state of the child at the time of commencement of the proceeding." I.C. § 31–1–11.6–3(1)(A). The home state is the state in which the child lived for at least six months with his parents immediately preceding the time involved. However, "periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period." I.C. § 31–1–11.6–2(5).

The court was also aware that Jay had been discovered with Mother in Tennessee. Therefore, the court was put on notice that there was an interstate dimension to this case.

The custody action began in 1989 when Father filed a petition for dissolution and custody and Jay's home state at that time was Indiana. Pursuant to Indiana Code § 31–1–11.6–3(1)(A), Indiana retained jurisdiction. In 1992, Kentucky was not Jay's home state because at that time, Jay had not yet resided in Kentucky. Further, Mother's abduction of Jay did not change the home state because the involuntary removal of a child would necessarily constitute a "temporary absence" from Indiana. It is important to note that one purpose for the adoption of the UCCJL is to "remedy the intolerable state of affairs in child custody disputes that had existed where self-help and the rule of 'seize-and-run' prevailed rather than the orderly processes of the law." *Matter of R.L.W.*, 643 N.E.2d 367, 369 (Ind.Ct.App. 1994). To do as Mother suggests and require a change in the "home state" as a result of the involuntary removal of the child from Indiana would contravene the purpose of the UCCJL. We conclude that Indiana was Jay's home state in July of 1992 when he was found and Father was granted temporary custody.[2]

### Jurisdiction in 1995

■ Mother argues that in 1995, "there was not one meaningful reason for the Dearborn court to retain jurisdiction in this case." Brief of Appellant at 22. Specifically, she asserts that Kentucky (1) was Jay's home state, (2) had significant connections to Jay, and (3) was the most convenient forum. Contrary to those assertions, we find that the trial court properly exercised jurisdiction over Jay in 1995.

Indiana Code § 31–1–11.6–7 states in part: Inconvenient Forum. A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

* * * * *

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

Father had resided in Kentucky since 1991 and Jay had joined him there in 1992. Both parties agree that Jay's "home state" in 1995 was Kentucky. However, the Kentucky and Indiana courts discussed the issue of jurisdiction and on May 24, 1994, the Indiana court issued an order which stated that "Comes now the Court and after hearing and after consultation with Honorable Mary C. Noble, Judge of the Circuit Court in Lexington, Kentucky, and retains jurisdiction of this cause of action for purposes of the hearing formerly set for June 15, 1995." Record at 150. It is clear from the order that while Kentucky may have been Jay's home state and the more convenient forum, the Kentucky court declined to exercise subject matter jurisdiction over Jay. Thus, the Indiana court properly retained jurisdiction. *See In re Hughes*, 665 N.E.2d 929 (Ind.Ct.App.1996) (court may assume jurisdiction over child with home state other than Indiana if home state has declined to exercise jurisdiction). Mother has failed to show that the court abused its discretion by determining that it had subject matter jurisdiction pursuant to the UCCJL.

Affirmed.

ROBERTSON and DARDEN, JJ., concur.

---

2. We note that Indiana did not retain subject matter jurisdiction under Indiana Code § 31–1–11.6–3(1)(B), but had jurisdiction pursuant to Indiana Code § 31–1–11.6–3(1)(A). A court has subject matter jurisdiction under subsection (1)(B) when Indiana "has been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal ... and a parent or person acting as parent continues to live in this State." Father did not reside in Indiana in 1992 and, thus, he did not satisfy the conditions in that section of the statute.