Argued and submitted September 12, affirmed December 3, 1997, petition for review denied March 24, 1998 (326 Or 627)

In the Matter of the Marriage of

Wendelyn K. HORIBA,
*Respondent,*

*and*

Takahiko HORIBA,
*Appellant.*

(95C-32598; CA A94499)

950 P2d 340

Gordon L. Dick argued the cause for appellant. With him on the brief was Wheeler & Dick.

John L. Hemann argued the cause for respondent. With him on the brief was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Before Haselton, Presiding Judge, Deits, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Father, a Japanese citizen, appeals from a judgment of dissolution, awarding sole custody of the parties' two children to mother, a citizen of the United States. Father argues that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), ORS 109.700 *et seq*, to determine custody. Father further contends that, if the trial court did have jurisdiction under the UCCJA, the court erred because it did not decline to exercise it. On *de novo* review, ORS 19.125(3), we affirm.

■■ Mother grew up in Oregon, and her immediate family continues to reside in Salem. In 1992, mother and father were married in Nagoya, Japan. They had two children, Sean, who was born in November 1992, and Naomi, who was born in May 1994. Both children were born in Japan but have dual citizenship. The parties and their children resided in Japan until late April 1995. Both children attended day care in Japan; Sean attended day care for approximately one year and two months and Naomi attended day care for approximately three weeks. However, it is undisputed that both children spent substantial time in Oregon while visiting mother's family and that their primary health care providers were in Oregon.

In late April 1995, mother brought the children to Oregon to live with her parents. On May 2, mother sought and was granted a restraining order against father.[1] On May 9, mother filed a complaint "for separation and for determination of child custody" under the UCCJA.[2] At the same time mother filed an *ex parte* motion seeking temporary relief, including temporary custody of the two children and interim spousal and child support. Mother's affidavit in support of that motion stated, *inter alia*, that father had been violent and abusive towards mother and Sean and that mother had brought the children to Oregon to escape that abuse.[3] The trial court granted mother's motion.

---

[1] The record in this case does not disclose the basis of the restraining order.

[2] In February 1996, mother filed an "amended petition to dissolve marriage and for determination of child custody per UCCJA."

[3] We are mindful that a detailed description of mother's allegations, as well as the averments of other affidavits father and mother subsequently filed, *see* 151 Or

On July 31, 1995, father filed a petition in a Japanese court seeking custody of the children. In November 1995, father moved, in the Oregon proceeding, to dismiss mother's petition, on grounds of lack of personal jurisdiction and lack of subject matter jurisdiction under the UCCJA.[4] With respect to the UCCJA, father asserted that mother had failed to satisfy any of the four separate tests for subject matter jurisdiction of child custody disputes prescribed in the UCCJA. ORS 109.730(1). Further, father asserted that, even if the trial court had subject matter jurisdiction, it should nevertheless decline to exercise jurisdiction because: (a) Oregon is an inconvenient forum, ORS 109.770; (b) a proceeding for custody was pending in Japan, *see generally* ORS 109.760(2), (3); and (c) mother had "wrongfully taken" the children from Japan and had engaged in other "similar reprehensible conduct." ORS 109.780(1).[5] Father submitted a supporting affidavit generally denying mother's allegations of abuse and contending that mother had engaged in substance abuse, that she had neglected the children, and that she had physically abused father and the children.

Mother responded that the trial court had subject matter jurisdiction both because mother and children had a "significant connection" with Oregon and there was "substantial evidence [in Oregon] concerning the [children's] present or future care," ORS 109.730(1)(b), and because the children are present in Oregon because of an "emergency." ORS 109.730(1)(c). Mother also argued that, in the totality of the circumstances, the court should exercise jurisdiction and particularly disputed father's assertions that Japan was a more convenient forum and that mother had "unclean hands" militating against the exercise of jurisdiction. Mother submitted an affidavit that described father's allegedly abusive conduct

---

App at 492-93, will benefit no one. *See Sarty v. Forney*, 12 Or App 251, 253, 506 P2d 535 (1973). Nevertheless, a general description is essential to understanding the posture of the case.

[4] Father does not pursue the personal jurisdiction argument on appeal.

[5] ORS 109.780(1) provides:

"If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances."

and which described the children's circumstances and development since coming to Oregon. Attached to that affidavit were some photographs as well as letters from the children's Oregon day care providers. Father subsequently moved to strike those attachments on relevancy and hearsay grounds.

After several more rounds of memoranda and affidavits, the trial court denied father's motions to dismiss and to strike. The trial court found, in part:

"(4)  The children and petitioner have significant connections with the state of Oregon;

"(a)  The petitioner/mother lived in Salem, Oregon, prior to her marriage;

"(b)  The children spent a significant number of months in the United States, prior to their move in May 1995;

"(c)  The maternal grandparent's siblings and extended family live in Salem, Oregon; and

"(d)  The children have established health care records and relationships in Salem, Oregon, that precede the May 1995 move.

"(5)  Substantial evidence is available in Oregon concerning the children's present and future care, protection, training, and personal relationships.

"(6)  The children are currently in Salem, Oregon, and the petitioner has made a showing of emergency, requiring the protection of the children, through statements of mistreatment and abuse of petitioner and the children, by respondent/father;

"* * * * *

"(8)  The Oregon court has jurisdiction over the subject matter of custody;

"(9)  The Oregon Court, under all of the circumstances, does not decline to exercise its jurisdiction. The best interests of the children are sufficient for this court to invo[k]e jurisdiction;

"(10)   A complete trial, in Oregon, regarding custody and visitation should amply protect the interests of the children and result in evidence permitting an appropriate judgment.

"(11)   Petitioner moved, with the children, from Japan to Oregon without the knowledge of respondent. The Oregon court could not conclude from this fact that the doctrine of clean hands applies or that the Petitioner wrongfully removed the children from Japan.

"(12)   Respondent father vigorously denies petitioner's allegations and recited in detail her failings and his perceptions of her. The Court must balance the parties' materials and focus on the best interests of the children. Japan is not a signator to the UCCJA. There is no practicable basis for communications that might take place between Oregon and Japanese Courts pursuant to the UCCJA. The issues must be litigated in Oregon so the children can have their interests protected.

"* * * * *

"Given the substantial allegations and evidence of anger and abuse, the doctrine of clean hands would not preclude jurisdiction on the allegation petitioner was unjustified, reprehensible, and wrong in taking the children to the United States. Petitioner presents tenable grounds and reasons for her conduct."

In August 1996, mother presented her case for custody of the children. Father did not appear. The trial court issued a judgment dissolving the marriage and awarding mother sole custody, granting no visitation rights to father. On appeal, father makes three general arguments that flow, more particularly, from five assignments of error. First, he asserts, the trial court erred in determining it had subject matter jurisdiction under the UCCJA, particularly ORS 109.730(1)(b) and (c). Second, even if the court had jurisdiction under the UCCJA, it erred in opting to exercise that jurisdiction. Third, the court erred in denying father's motion to strike certain portions of, and attachments to, mother's second affidavit. We consider each in turn.

■    Under the UCCJA, the trial court must first determine whether the forum has jurisdiction under any of the four grounds specified in ORS 109.730(1). If there is subject

matter jurisdiction, the court must then decide whether to exercise or decline jurisdiction by reference to a variety of factors. *See, e.g.,* ORS 109.770; ORS 109.780. Here, father's first assignment of error challenges the trial court's determination that it had jurisdiction under both ORS 109.730(1)(b) and (c).[6] Because we conclude that there is jurisdiction under subsection (1)(b), we do not consider the applicability of subsection (1)(c).

ORS 109.730(1)(b) provides:

"(1)  A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"* * * * *

"(b)  It is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

Father argues that that provision does not apply because, as of May 1995, when the petition was filed, the children did not have the requisite "significant connection" to Oregon. *See Stubbs v. Weathersby,* 320 Or 620, 624-25, 892 P2d 991 (1995) ("[W]e consider the facts as of the date that the * * * proceeding was commenced."). We disagree.[7]

■    It is uncontroverted that mother was reared in Oregon and that most of her close relatives, including her mother, father, grandmother, sister, and brother, live in

---

[6] ORS 109.730(1)(c) provides that a court has subject matter jurisdiction if:

"The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent."

[7] In this connection, father also argues that Japan should be considered a "state" under the UCCJA. However, the question of whether Japan—or any foreign nation—is a "state" under the UCCJA is immaterial to the initial, threshold determination of subject matter jurisdiction under ORS 109.730(1)(b). To the extent that question pertains to father's arguments concerning the court's decision not to decline jurisdiction, it is answered below. 151 Or App at 497-99.

Oregon. Although the record is somewhat inconsistent and unclear as to the particulars, it demonstrates generally that the children spent a significant amount of time in Oregon before the commencement of this action. In particular, the evidence shows that Sean spent at least six months in Oregon in the first two and a half years of his life, and that Naomi spent at least four months in Oregon in the first year of her life. Moreover, both children received their immunizations and their primary medical care from an Oregon pediatrician prior to May 1995. Considering the age of the children, the amount of time they have spent here, the fact that their primary medical providers and medical records are in Oregon, and their interactions with the many close relatives who reside here, we find that both children had a significant connection with Oregon before May 1995. We conclude, for similar reasons, that there was available in Oregon "substantial evidence" concerning the children's present and future care, training, and personal relationships. Given those considerations, it was in the best interest of the children that an Oregon court assume jurisdiction over their custody. ORS 109.730(1)(b).

■　　　Father's second, third, and fourth assignments of error challenge, in various particulars, the trial court's decision to exercise subject matter jurisdiction. In his second assignment, father argues that, under ORS 109.760, the trial court was required to consult with the Japanese court and that it failed to do so. ORS 109.760 provides, in part:

"(2)　* * * If the court has reason to believe that proceedings may be pending *in another state* it shall direct an inquiry *to the state court administrator* or other appropriate official *of the other state*.

"(3)　* * * If the court is informed that a proceeding was commenced *in another state* after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum." (Emphasis supplied.)

In his third assignment of error, father contends that, because of mother's "unclean hands," the court should have declined to exercise jurisdiction. ORS 109.780(1) provides:

"If the petitioner for an initial decree has wrongfully taken the child *from another state* or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances." (Emphasis supplied.)

Father's fourth assignment asserts that the trial court erred in exercising its jurisdiction because Oregon is an inconvenient forum, and because Japan is a "more appropriate forum" under ORS 109.770. ORS 109.770 provides, in part:

"(1)   A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and *that a court of another state is a more appropriate forum.*

"* * * * *

"(3)   In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child *that another state* assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a)   If *another state* is or recently was the child's *home state*;

"(b)   If *another state* has a closer connection with the child and the family of the child or with the child and one or more of the contestants;

"(c)   If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in *another state*;

"(d)   If the parties have agreed on another forum which is no less appropriate; and

"(e)   If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in ORS 109.720(1) and (2)." (Emphasis supplied.)

Given the emphasized statutory language, the ultimate success of the second and fourth assignments—and, to a large extent, of the third[8]—depends on whether Japan is a "state"

---

[8] If Japan is not a "state," mother could not have "wrongfully taken the [children] from another state." ORS 109.780(1). However, at least arguably, ORS 109.780 might still apply if mother "engaged in similar reprehensible conduct."

under the UCCJA. In construing that term, we first consider the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The text is "the best evidence of the legislature's intent." *Id*. Only if the legislature's intent remains unclear do we examine the legislative history.

■      The UCCJA defines "state" as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." ORS 109.710(10). That definition is clear and controlling. Nothing in that definition can reasonably be construed as encompassing a foreign nation.

Nevertheless, father argues that the UCCJA's statement of purpose, ORS 109.720,[9] and its statement regarding the UCCJA's application to the international arena, ORS 109.720(3), compel us to conclude that Japan is a "state." ORS 109.720(3) provides:

"The *general policies* of ORS 109.700 to 109.930 extend to the international area. The provisions of ORS 109.700 to

---

[9] ORS 109.720 provides, in part:

"(1) The general purposes of ORS 109.700 to 109.930 are to:

"(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody[;]

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the family of the child have the closest connection and where significant evidence concerning care, protection, training, and personal relationships of the child is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family of the child have a closer connection with another state;

"(d) Discourage continuing controversies over child custody[;]

"(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

"(f) Avoid relitigation of custody decisions of other states in this state in so far as feasible;

"(g) Facilitate the enforcement of custody decrees of other states;

"(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child[.]"

109.930 relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody, rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." (Emphasis supplied.)

Father argues, in effect, that the generalized "policy" directive of ORS 109.720(3) overrides the particular definition of "state" in ORS 109.710(10) in such a way as to require consultations with the Japanese court and to require a forum *non conveniens* comparison with Japan. Invoking decisions from other states that assume or hold that foreign nations are "states" within the meaning of the UCCJA,[10] father contends that "[e]xtension of the definition of state to include foreign nations is necessary to accomplish the general purposes of the UCCJA."

Some other courts have, indeed, followed the approach father urges. *See, e.g.*, note 10. However, none of those courts purported to apply, much less was compelled to apply, the method of statutory construction prescribed by *PGE v. Bureau of Labor and Industries*. Moreover, none of those decisions explains how generalized policy concerns can alter a discrete and explicit statutory definition. "State" means state. If the legislature had intended that term to include foreign nations, it easily could have done so.[11] If the legislature had intended the consultation and forum *non conveniens* provisions of ORS 109.760 and ORS 109.770 to apply to foreign nations, it easily could have done so. But it did not. And we cannot. It is not our province to "insert what has been omitted, or to omit what has been inserted." ORS 174.010.

---

[10] *See, e.g., Falco Adkins v. Falco Antapara*, 850 SW2d 148 (Tenn App 1992), *appeal denied (1993); Hattoum v. Hattoum*, 295 Pa Super 169, 441 A2d 403 (1982); *Stock v. Stock*, 677 So 2d 1341 (Fla App 1996); *In re Marriage of Arnold*, 222 Cal App 3d 499, 271 Cal Rptr 624 (1990); *Ruppen v. Ruppen*, 614 NE2d 577 (Ind App 1993); *Middleton v. Middleton*, 227 Va 82, 314 SE2d 362 (1984).

[11] *Compare* ORS 110.303(19) (Defining "state" for purposes of the Uniform Interstate Family Support Act as "state of the United States, the District of Columbia, the Commonwealth of Puerto Rico or any territory or insular possession subject to the jurisdiction of the United States. The term 'state' includes an Indian tribe and *includes a foreign jurisdiction that has established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under ORS 110.300 to 110.441*." (Emphasis supplied.)).

■ Because Japan is not a "state" within the meaning of those provisions of the UCCJA that father invokes, the second and fourth assignments of error fail. As noted, however, 151 Or App at 497 n 8, that conclusion does not completely decide father's third assignment based on the "unclean hands" provision, ORS 109.780(1). Father asserts, particularly, that mother engaged in "reprehensible conduct" by neglecting and mistreating the children and by taking them from Japan without his knowledge or consent.[12]

Mother responds on two levels. First, she asserts that father limited his appearance in the trial court to contesting whether the court had subject matter jurisdiction and, thus, "waived" any errors relating to the court's decision to exercise that jurisdiction. Second, mother disputes the merits of the "unclean hands" issue.

Mother's preservation argument is mistaken. Father did not limit his appearance merely to contesting the existence of subject matter jurisdiction. Rather, the parties' pleadings and evidentiary submissions, as well as the trial court's order denying father's motion to dismiss, demonstrate that the parties also fully litigated the question of whether the court should decline to exercise jurisdiction for a variety of reasons, including mother's supposed "reprehensible conduct."

Turning to the merits, we reject father's position. Without dwelling on the details of the parties' charges and counter-charges of abuse and neglect, we agree with the trial court's assessment of the evidence. See 151 Or App at 493-94.

■ In his fifth and final assignment of error, father argues that the trial court erred in denying his motion to strike portions of mother's affidavit and attachments to the affidavit, including letters written by the children's Oregon day care providers and an affidavit from one of the children's counselors. Father argues that those materials were irrelevant to the determination and exercise of jurisdiction and, in

---

[12] On appeal, father acknowledges that Japan is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction. He asserts, however, without elaboration, that "the purposes of the UCCJA and the Hague Convention [with respect to discouraging abductions] are consistent."

some instances, included inadmissible hearsay. We do not resolve those evidentiary objections because, even if those materials should have been excluded, we conclude, on *de novo* review of the remaining evidence, that the trial court had subject matter jurisdiction and did not err in exercising that jurisdiction.

We have considered father's other arguments and reject them without further discussion.

Affirmed. Costs to mother.