**Erick David GAMAS–CASTELLANOS, Appellant–Respondent,**

v.

**Catherine Marie GAMAS, Appellee–Petitioner.**

No. 10A01–0303–CV–104.

Court of Appeals of Indiana.

Sept. 9, 2003.

---

Vicki L. Carmichael, Jeffersonville, IN, Attorney for Appellant.

Amber C. Shaw, Mosley, Bertrand, Jacobs, & McCall Jeffersonville, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Erick David Gamas–Castellanos ("Father") appeals from the trial court's denial of his motion to register custody orders issued by Mexico and Louisiana. We affirm.

### Issues

Father raises five issues, which we consolidate and restate as whether the trial court properly assumed jurisdiction under Indiana's Uniform Child Custody Jurisdiction Law ("UCCJL").

### Facts and Procedural History

Father and Catherine Marie Gamas ("Mother") were married in Texas in 1986. Shortly thereafter, the couple moved to Mexico and had two children, T.K.G. in 1988 and L.S.G. in 1990 (collectively "the Children"). The family returned to Texas in 1991, and Father and Mother divorced in 1995. In its divorce decree, the Texas court granted permanent physical custody of the Children to Mother, with supervised visitation to Father. In March of 1996, Mother and the Children moved to Indiana.

On May 22, 1996, the Children went to visit Father in Texas. Mother gave written permission for Father to travel with the children to Mexico City, provided that the Children were returned to Indiana by August 11, 1996. According to Mother, the Children called Mother by telephone and told her that Father was not going to return the Children from Mexico. On July 17, 1996, Mother contacted Clarksville, Indiana police and filed a report alleging Father's interference with custody. Later in the summer, Father contacted Mother and informed her that he had found a specialist in Mexico to treat T.K.G.'s skin disorder, but the doctor would not begin treatment unless Mother consented to T.K.G. remaining in Mexico for the dura-

tion of the treatment.[1] In October of 1996, Mother traveled to Mexico, where she and Father executed a document granting custody of the Children to Father.[2] Mother returned every spring for the next three years to visit the Children, and during the third visit in 1999, took the Children and returned with them to Indiana.

Father took a position of employment in the Netherlands in May of 1999. In April of 2000, L.S.G. wanted to visit her Father. Mother sent L.S.G. to the Netherlands and allowed her to stay with Father for the 2000–2001 school year and the summer of 2001. However, after the summer of 2001, rather than sending L.S.G. back to Indiana, Father and L.S.G. moved to Louisiana in August of 2001.

Mother learned of Father's and L.S.G.'s whereabouts in 2002, and on May 16, 2002, domesticated the Texas divorce decree with the Indiana trial court. Mother traveled to Louisiana and registered the domesticated order with the East Baton Rouge parish clerk, and local law enforcement enforced the order and returned L.S.G. to Mother. On June 14, 2002, Father filed a motion with the Louisiana trial court to domesticate the Mexican decree. Mother filed a motion to dismiss based upon lack of subject matter jurisdiction, which the Louisiana trial court denied with respect to L.S.G. on October 28, 2002. The Louisiana court declined exercising jurisdiction over T.K.G.

In the interim, Mother filed a motion for modification of visitation on July 9, 2003 with the Indiana trial court. Father filed motions to register the Mexican decree and the Louisiana order, which the trial court denied. The trial court also assumed jurisdiction over both children pursuant to the UCCJL. This appeal ensued.

## Discussion and Decision

### A. Standard of Review

Under the UCCJL, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute. *Ashburn v. Ashburn*, 661 N.E.2d 39, 41 (Ind.Ct.App.1996). When confronting an interstate custody dispute, the trial court must engage in a multi-step analysis to determine: 1) whether it has subject matter jurisdiction; 2) whether there is a custody proceeding pending in another state which would require the court to decline its jurisdiction; and 3) whether the trial court should exercise its jurisdiction because Indiana is the convenient forum. *Largen v. Largen*, 535 N.E.2d 576, 578 (Ind.Ct.App.1989). Upon review of such determinations, we apply an abuse of discretion standard. *Moore v. Miller*, 675 N.E.2d 755, 758 (Ind.Ct.App.1997). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court, or if the trial court has misinterpreted the law. *Ashburn*, 661 N.E.2d at 41.

### B. Analysis

In determining whether a trial court has subject matter jurisdiction over a custody dispute, we look to the UCCJL, which provides in pertinent part:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody de-

---

1. T.K.G. was diagnosed with vitiligo, a skin disorder characterized by discoloration of the skin. Father testified that the treatment would take two to five years.

2. Mother testified that Father threatened that she would never see the Children again if she didn't agree to execute the custody modification. Father denied ever making such a threat.

termination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IND.CODE § 31–17–3–3.

On appeal, Father contends that Indiana is not the "home state" of T.K.G. because T.K.G. only came to Indiana after Mother absconded with T.K.G. from Mexico. Further, Father argues that Louisiana, not Indiana, is the "home state" with respect to L.S.G., and thus Indiana did not have jurisdiction over any custody proceedings because a separate proceeding had been initiated in Louisiana. We address each argument in turn.

### 1. Mexican decree

■ With respect to the Mexican decree, we first observe that the principles of comity "favor recognition of a foreign sovereign's jurisdiction and subsequent child custody decree." *Ruppen v. Ruppen*, 614 N.E.2d 577, 582 (Ind.Ct.App.1993). These principles are not absolute, however. *Id.* Decrees rendered under circumstances that offend a state's public policy may be rejected. *Id.* (citations omitted). The party seeking to avoid a foreign sovereign's entry of decree must prove either lack of jurisdiction or denial of notice and opportunity to be heard. *Id.* (citations omitted); *see also* IND.CODE § 31–17–3–23 (international application of UCCJL requires reasonable notice and opportunity to be heard).

Here, Father contends that Mexico was the children's "home state" at the time the Mexican decree was entered. We disagree. The evidence reveals that Mother had permanent physical custody of the Children under the Texas divorce decree. Mother and the Children moved to Indiana in March of 1996. The Children's visit to Texas, and then to Mexico, was a "temporary absence" from Indiana and that time should be counted as part of the six-month period for determining "home state."

*Stewart v. Stewart,* 708 N.E.2d 903, 906 (Ind.Ct.App.1999) (citing IND.CODE § 31-17-3-2(5)). Indeed, Father does not dispute that he was obligated to return the children to Indiana on or before August 11, 1996. By October 10, 1996, the date the custody proceeding was initiated in Mexico, more than six months had passed since the Children had moved to Indiana, precluding Mexico from being the "home state" under the UCCJL.

Moreover, because Indiana was the "home state," Father incorrectly asserts that Mexico would meet the significant connection test under Indiana Code Section 31-17-3-3(a)(2). *See id.* at 907 (significant connection test inapplicable if another state qualifies as a "home state"). Without jurisdiction, Mexico had no authority to modify the Texas divorce decree. *See* Ind.Code § 31-17-3-14(a) (court may modify out-of-state custody decree only if court has jurisdiction).

■ Finally, we note that the Mother and Father could not consent to Mexican jurisdiction by agreement, as subject matter jurisdiction on custody modification cannot be conferred by the consent of the parties. *Christensen v. Christensen,* 752 N.E.2d 179, 182 (Ind.Ct.App.2001). Recognition of the Mexican decree would fly in the face of one of the central purposes of the UCCJL, to deter child abductions or other unilateral removals in order to obtain custody awards. *See* IND.CODE § 31-17-3-1(5).[3] Thus, the trial court did not abuse its discretion by declining to recognize the Mexican decree. *See* IND.CODE § 31-17-3-13 (Indiana courts shall recognize modification decree of another state that are made "substantially in accordance" with the UCCJL).

### 2. Louisiana order

■ Father also contends that the Indiana court was required to decline jurisdiction because Father initiated a custody action in Louisiana prior to Mother's filing of her petition for modification of visitation. Father argues that Indiana is required to give full faith and credit to the jurisdictional determination of the Louisiana court.

Indiana Code Section 31-17-3-6(a) provides that "[a] court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." Our review of the record demonstrates that the Louisiana court was not exercising jurisdiction in substantial conformity with the UCCJL.

We first note that the Louisiana court should have been aware that Mother had initiated proceedings in Indiana in May of 2002 when she registered the Texas divorce decree with the Indiana trial court under Indiana Code Section 31-17-3-16. In fact, Mother filed this domesticated or-

---

**3.** Because we conclude that Mexico did not have jurisdiction to modify custody, we do not address whether the procedures provided by Mexican law provided Mother "reasonable notice and opportunity to be heard." We have concerns that Mother's "opportunity to be heard" was limited, as Mother, who testified she was not fully fluent in Spanish and did not understand the proceeding, had to rely on Father's translation of the decree, which was written in Spanish, and the conversation between the parties and the Mexican official was in Spanish. Moreover, the attorney that drafted the decree was an acquaintance of Father, and Mother did not have independent counsel to advise her or review the decree.

der with the Louisiana authorities in order to enforce the order when she located L.S.G. The Louisiana court would have declined jurisdiction had it been aware of the prior registration of the Texas divorce decree in Indiana. *See* LA.REV.STAT. ANN. 13:1705(A) (Louisiana courts shall not exercise jurisdiction if proceeding concerning the custody of a child is pending in another state).

Even if the mere registration of the Texas divorce decree were not construed as a pending custody proceeding in Indiana, Louisiana did not have jurisdiction under the Uniform Child Custody Jurisdiction Act ("UCCJA"). The Louisiana court found that it had "home state" jurisdiction over L.S.G. under Louisiana's version of the UCCJA. *See* LA.REV.STAT. ANN. 13:1702(A)(1)(ii). The Louisiana court indicated that because L.S.G. lived in Louisiana since August of 2001, Louisiana acquired jurisdiction over L.S.G. as her "home state." App. at 72–73. The time L.S.G. spent in Louisiana, however, resulted from Father's failure to return L.S.G to Indiana after she visited him in the Netherlands. Such a "temporary absence" may not count toward the six-month period to establish Louisiana as the "home state." *See Ortman v. Ortman*, 670 N.E.2d 1317, 1321 (Ind.Ct.App.1996).

The Louisiana court reasoned that the Mexican decree constituted an "extra-judicial modification" of the original Texas divorce decree, and thus custody over the Children was transferred to Father.App. at 72. As we already noted, Mexico did not have jurisdiction to modify custody because Indiana, not Mexico, was the "home state" in October of 1996. Thus, the Louisiana court should not have recognized the Mexican decree as a custody modification of the Texas decree. LA.REV. STAT. ANN. 13:1712 (Louisiana courts should recognize out-of-state decrees only if the

court that entered the decree had jurisdiction). Instead, it should have given full faith and credit to the original Texas divorce decree that was registered with the Indiana court. *Id.*

Because the Louisiana court failed to properly apply the UCCJA in accepting jurisdiction over L.S.G., it was not exercising jurisdiction under the UCCJA in substantial conformity with the law. *See Smith v. Smith*, 594 N.E.2d 825, 828 (holding Indiana court properly assumed jurisdiction despite simultaneous proceeding in Florida court modifying Indiana decree; Florida court's failure to apply UCCJA when it modified Indiana decree was not in substantial conformance with UCCJA and should not be recognized). The Indiana court did not err in declining to recognize the Louisiana court's jurisdictional order. *See* 28 U.S.C. § 1738A(g) (Parental Kidnapping Prevention Act precludes court from taking jurisdiction only if court of another state is exercising jurisdiction consistent with the Act); *see also* IND.CODE § 31–17–3–13 (Indiana courts shall recognize modification decree of another state if that state assumed jurisdiction "substantially in accordance" with the UCCJL).

### C. Conclusion

The Indiana trial court properly exercised jurisdiction under the UCCJL, as Indiana was T.K.G's and L.S.G's "home state" since March of 1996. Neither Mexico nor Louisiana properly acquired jurisdiction over either child, and thus the trial court did not err in denying Father's motion to recognize those foreign decrees.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.